IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
November 14, 2007 Session

**STATE OF TENNESSEE v. ANDRE DOTSON**

**Appeal by permission from the Court of Criminal Appeals**
**Criminal Court for Shelby County**
**Nos. 04-00868; 04-00869; 04-00870; 04-00871  Joseph B. Dailey, Judge**

_____

**No. W2005-01594-SC-R11-CD - Filed April 28, 2008**

_____

The Defendant, Andre Dotson, was convicted of two counts of aggravated robbery and two counts of robbery.  On direct appeal of right, the Court of Criminal Appeals modified one robbery conviction to theft based upon insufficient evidence of the element of fear on the part of a victim, but otherwise affirmed.  We granted permission to appeal in order to consider several issues, including those related to the consolidation of the four indictments in a single trial.  We hold that (1) the consolidation of the four charges constituted reversible error; (2) while the trial court did not abuse its discretion by severing the two indictments against a co-defendant, that would have been unnecessary had the Defendant been afforded separate trials; (3) the co-defendant's statements to police did not fall under the "against interest" exception to the hearsay rule and were properly excluded as evidence; and (4) the evidence at trial was sufficient to establish fear on the part of one of the victims, an essential element for the offense of robbery. Because the trial court erroneously refused to order separate trials on each of the four indictments and the error cannot be classified as harmless, the judgment of the Court of Criminal Appeals is reversed and the Defendant is granted new trials on each indictment.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals**
**Affirmed in Part, Reversed in Part**

GARY R. WADE, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and JANICE M. HOLDER, CORNELIA A. CLARK, and WILLIAM C. KOCH, JR. JJ., joined.

William G. Gosnell, Memphis, Tennessee, for the appellant, Andre Dotson.

Robert E. Cooper, Jr., Attorney General & Reporter; Michael E. Moore, Solicitor General; and David H. Findley, Assistant Attorney General for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

Between July 11 and August 27, 2003, Andre Dotson (the "Defendant"), was involved in the robbery of four wholesale distributor trucks which were in the process of making deliveries to retail stores in Shelby County. The Defendant, accompanied by a second individual in each robbery, was indicted on the following charges:

(1)     robbery of Herbert Crain on July 11, 2003;
(2)     robbery of Gabriel Shears and Keith Richardson on August 5, 2003;
(3)     aggravated robbery of Willis Yarbrough on August 13, 2003; and
(4)     aggravated robbery of Deangelo Mitchell on August 27, 2003.

On the morning of trial, the State made a motion to consolidate the four separate indictments for trial. The trial court granted the State's motion and then granted a motion for severance by a co-defendant, Rodney Finley,[1] because Finley was named in only two of the four indictments.[2]

## Robbery of Herbert Crain

On July 11, 2003, Herbert Crain, a delivery truck driver for Forrest City Grocery in Memphis, was unloading merchandise from the side door of his trailer for delivery to the Liberty Mart. Kevin Young, Crain's assistant, had already taken a load of merchandise into the store when a man, later identified as the Defendant, entered the trailer and ordered Crain outside. As Crain stepped out of the trailer, he tried to close its door in an effort to trap the Defendant inside, but was unsuccessful. In response, the Defendant threatened to shoot Crain and "put[] his hand low," as if reaching for something. According to Crain, the Defendant, assisted by a second individual, then loaded 128 cartons of cigarettes into a blue, "mid to late 80's" Chevrolet Lumina and drove away.

During his testimony, Crain described himself as "just mad" during the course of the robbery, explaining that only his concern for his children prompted his compliance with the Defendant's demands. Crain acknowledged that he did not actually see a weapon but, because he knew that other drivers of his company had been robbed at gunpoint, surmised that the Defendant was armed. Crain was unable to identify the Defendant as the robber.

As Young left the Liberty Mart to return to the truck, he saw the Defendant inside the grocery trailer. Less than two months later, he selected the Defendant from a photographic array furnished by the police. At trial, Young made a positive identification of the Defendant as one of the two robbers.

---

[1] The co-defendant is referred to as Rodney Finley in the relevant indictments. The Defendant, in his testimony, also refers to Finley as "Rodney." Finley is referred to as Robert Finley in the State's brief and in the opinion of the Court of Criminal Appeals.

[2] Although the Court of Criminal Appeals' opinion indicates that the State made the motion to sever the trials of the co-defendants, the record shows that the motion to sever was made orally by Finley's defense counsel. He said, "[I]f [the prosecutor] wants to consolidate [the offenses], I think she's going to have to just try one defendant at a time because you've got one aggravated robbery that [Finley is] indicted on–got one ag[gravated] robbery that [Finley is] not indicted on."

## Robbery of Gabriel Shears, Jr. and Keith Richardson

On August 5, 2003, Gabriel Shears, Jr., also employed by Forrest City Grocery, was delivering cigarettes to a BP store on Shelby Drive. As Shears was placing merchandise on a dolly beside the truck and the truck driver, Keith Richardson, was working inside the trailer, a man, later identified as the Defendant, jumped out of an approaching car, entered the trailer, and started moving cases of cigarettes to the door. A second robber loaded the cases into their car. Shears testified that when the Defendant ordered Richardson to "get back," the two "tussled," and the Defendant threatened to "blow [Richardson's] brains out." Shears did not see a gun, but saw the Defendant grab his jeans' pocket, indicating that he might be armed. Shears acknowledged that he feared for his safety. One month after the robbery, Shears selected the Defendant from a photographic array supplied by the police. At trial, he again identified the Defendant, asserting that he was "positive" that the Defendant was one of the two robbers.

## Aggravated Robbery of Willis Yarbrough

On August 13, 2003, Willis Yarbrough, a truck driver for H.T. Hackney Company, was making a delivery at a Walgreen's store in Shelby County. As he worked inside the cargo area of the truck, the Defendant appeared, pointed a gun, and ordered him to the front of the trailer. Yarbrough, fearful for his safety, complied with the directive. The Defendant then began to pass cases of cigarettes to a second robber standing nearby. Later, Yarbrough picked the Defendant out of a photo lineup, identified him at trial, and expressed certainty in the accuracy of his identification.

## Aggravated Robbery of DeAngelo Mitchell

On August 27, 2003, DeAngelo Mitchell, an assistant on a delivery truck for Forrest City Grocery, was unloading merchandise at Yung's Food Market. While he was inside the trailer, the Defendant entered, raised his shirt to reveal the butt of a pistol, and ordered him not to move. Mitchell, fearful of the circumstances, stood still as the Defendant moved cases of cigarettes to the trailer door. A second robber put the cases into a "Delta 88" automobile that had no license plate. Employees of Yung's Food Market called the police. Mitchell, who got a "good look" at the Defendant, picked his photo out of a photographic array and later, at trial, made a positive identification. He testified that he was "sure" that the Defendant was the robber.

After receiving a report from the police dispatcher that the robbers at Yung's were two black males in a blue Delta 88, Memphis Police Officer Myron Lawrence observed a car matching that description and began pursuit. After a ten- or fifteen-minute chase, the car was stopped and the two occupants fled on foot. The officers followed, apprehending the Defendant and a second male individual.[3]

---

[3] Officer Lawrence, in his testimony, described following the vehicle until it stopped. He testified that once the vehicle stopped "both persons got out," "they bailed out on the passenger's side," "[t]hey split up," and he caught and handcuffed one of them–who was identified in court as the Defendant. A second officer, Officer Greg Newberry, then testified that he pulled in behind Officer Lawrence, continued the pursuit in tandem, saw "two male blacks" inside the vehicle who "bailed out of the vehicle on the passenger's side," and went after the driver–who he testified he "believe[d]" to be Finley.

The investigating officers determined that the Oldsmobile Delta 88, used in the August 27th robbery of Mitchell, and a Chevy Lumina, the make used in the July 11th robbery of Crain, were owned by Victor Frayser, Rodney Finley's girlfriend, who was also indicted for the August 27th robbery. Upon searching the Oldsmobile, officers found cases of cigarettes.

Memphis Police Officer David Ayers had as his "primary duty" at that time "to investigate other similar robberies." In response to a question by the defense, he testified that his department had received reports of cigarette thefts from delivery trucks for about ninety days preceding July 11, 2003. Defense counsel then asked, "Did you know that [the Defendant] was in jail prior to July 11?" Although Officer Ayers expressed uncertainty about the comparative dates, he conceded that he was "not able to develop" any connections between the Defendant and the other robberies under his investigation.

At the conclusion of the State's proof, defense counsel conducted a voir dire of Finley, who invoked his Fifth Amendment right not to testify in the Defendant's trial. The trial court denied a subsequent motion by the Defendant to admit Finley's pretrial statement into evidence.

The Defendant, who had been incarcerated for several months until his release some seven days before the first of the four robberies, testified on his own behalf. He denied involvement in three of the charges but admitted that he stole cigarettes from Mitchell on August 27, 2003; however, he claimed that he did not possess a weapon and contended that he was guilty of only theft, rather than either robbery or aggravated robbery.[4]

The jury returned guilty verdicts for robbery for the Crain and Shears/Richardson indictments and for the aggravated robbery on the Yarbrough and Mitchell indictments. The trial court imposed sentences of ten, ten, seventeen, and seventeen years respectively. Because the sentences were ordered to be served consecutively, the effective sentence was fifty-four years.

While otherwise affirming the convictions and sentences, the Court of Criminal Appeals modified the Crain robbery to theft. Applying a subjective standard as to the victim's state of mind, the majority held that the evidence was insufficient to support the conviction for the robbery because Crain disavowed being "in fear." The majority concluded that "[i]f a victim is put in fear by the action of a defendant, at some point the victim's testimony should establish that he was afraid." All other issues were resolved in favor of the State.

**ANALYSIS**

---

[4] Robbery is defined as the "intentional or knowing theft of property from the person . . . by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (2006). The robbery becomes "aggravated" when "robbery as defined in § 39-13-401" is "accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon" or "where the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-402(a)(1), (2).

On appeal, the Defendant contends that the trial court erred (1) both by considering the belated motion to consolidate by the State and by trying all four indictments at one time; (2) by granting Finley's motion for severance from the trial; (3) by excluding from the evidence the statement Finley made to the police at the time of his arrest; and (4) by refusing to set aside the verdict on grounds the State failed to prove all elements of aggravated robbery or robbery. In its corresponding appeal, the State contends that the Court of Criminal Appeals erred by finding there was insufficient proof to support the conviction for the Crain robbery.

### I. Consolidation of Offenses

The initial issue raised by the Defendant is that the trial court improperly consolidated the four charges for trial. The opinion of the Court of Criminal Appeals provides an excellent recitation of the applicable law on the subjects of consolidation and severance of indictments for purposes of trial.

In order to consolidate separate indictments under Rule 8(b) of the Tennessee Rules of Criminal Procedure, the offenses need only be "of the same or similar character," an easily achievable standard in many instances. Tenn. R. Crim. P. 8(b)(2). A defendant, however, has a right under Rule 14(b)(1) of those rules to the "severance of offenses permissively joined [under Rule 8(b)(2)], unless the offenses are parts of a common scheme or plan and the evidence of one offense 'would be admissible upon the trial of the others.'" Spicer v. State, 12 S.W.3d 438, 443 (Tenn. 2000) (quoting Tenn. R. Crim P. 14(b)(1)).

In Spicer, we confirmed that "when a defendant objects to a pre-trial consolidation motion by the state, the trial court must consider the motion by the severance provisions of Rule 14(b)(1) [of the Tennessee Rules of Criminal Procedure], not the 'same or similar character' standard of Rule 8(b)." Id. "The primary inquiry into whether a severance should have been granted under Rule 14 is whether the evidence of one crime would be admissible in the trial of the other if the two counts of indictment had been severed." State v. Burchfield, 664 S.W.2d 284, 286 (Tenn. 1984).[5] When there is an objection to a motion to consolidate, the State bears the burden of producing evidence to establish that the consolidation is proper. State v. Toliver, 117 S.W.3d 216, 228 (Tenn. 2003) (citing Spicer, 12 S.W.3d at 447).

The procedure is well established. Before a trial court may deny a severance request, it must hold a hearing on the motion and conclude from the evidence and argument presented at the hearing

---

[5] In Spicer, we characterized the relevancy portion of the severance inquiry as a determination of whether "evidence of *each* offense is relevant to some material issue in the trial of *all* the other offenses." Spicer, 12 S.W.3d at 445 (emphasis added) (citing Tenn. R. Evid. 404(b)(2)). Tennessee Rule of Evidence 404(b)(2) does not, however, contain this language. We emphasize that mandatory severance is governed by Tennessee Rule of Criminal Procedure Rule 14(b)(1) which requires only that evidence of "one" offense, not "each" offense, be admissible at the trial of the others. The language employed in Spicer arose out of and was specific to its two-indictment consolidation.

that (1) the multiple offenses constitute parts of a common scheme or plan;[6] (2) evidence of one of the offenses is relevant to some material issue in the trial of the other offenses; and (3) the probative value of the evidence of the other offenses is not outweighed by the prejudicial effect that admission of the evidence would have on the defendant. Spicer, 12 S.W.3d at 445; see also Tenn. R. Evid. 404 (b)(3).

Tennessee Rule of Evidence 404(b) governs the admissibility of prior misconduct:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for some other purpose. The conditions which must be satisfied before allowing such evidence are:
(1) The court upon request must hold a hearing outside the jury's presence;
(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling and the reasons for admitting the evidence;
(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and
(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Generally, it is suggested that trial courts take a "'restrictive approach of 404(b) . . . because 'other act' evidence carries a significant potential for unfairly influencing a jury.'" State v. Bordis, 905 S.W.2d 214, 227 (Tenn. Crim. App. 1995) (omission in original) (quoting Cohen, Paine and Sheppeard, Tennessee Law of Evidence, § 404.7 at 131). The rationale behind the general rule is that admission of other wrongs carries with it the inherent risk of the jury convicting a defendant of a crime based upon his or her bad character or propensity to commit a crime, rather than the strength of the proof of guilt on the specific charge. When the defendant's prior bad acts are similar to the crime for which the defendant is on trial, the risk of unfair prejudice is even higher. As this Court has consistently cautioned, the jury should not "be tempted to convict based upon a defendant's propensity to commit crimes rather than . . . evidence relating to the charged offense." Spicer, 12 S.W.3d at 448.[7]

_____

[6] Only "signature crimes," "offenses that are part of a larger, continuing plan or conspiracy," and "offenses that are all part of the same criminal transaction" qualify as common scheme or plan. State v. Shirley, 6 S.W.3d 243, 248 (Tenn. 1999) (citing Neil P. Cohen et al., Tennessee Law of Evidence § 404.11, at 180 (3d ed. 1995)).

[7] In State v. Rickman, 876 S.W.2d 824, 828 (Tenn. 1994) (citation omitted), we said:

[t]he general rule excluding evidence of other crimes is based on the recognition that such evidence easily results in a jury improperly convicting a defendant for his or her bad character or apparent propensity or disposition to commit a crime regardless of the strength of the evidence concerning the offense on trial. Such a potential particularly exists when the conduct or acts are similar to the crimes on trial.

On appeal, "decisions to consolidate or sever offenses pursuant to Rules 8(b) and 14(b)(1) are to be reviewed for an abuse of discretion." State v. Shirley, 6 S.W.3d at 247. "[A] trial court's refusal to sever offenses will be reversed only when the 'court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" Id. (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)).

The Court of Criminal Appeals concluded that the trial court, while correctly determining that a permissive joinder under Rule 8(b)(2) was proper because of the similar nature of the crimes alleged, applied an incorrect legal standard when the Defendant objected to the consolidation of the offenses. That court rightly held that the issue should have been addressed under the right to severance under Rule 14(b)(1). Here, the State properly concedes that it was error for the trial court to fail to sustain the Defendant's objection to the consolidation of the four indictments for trial; however, the State claims the error was harmless in the context of the trial, the conclusion reached by the Court of Criminal Appeals.

The error here is neither structural,[8] requiring an automatic reversal, nor constitutional, which requires reversal unless the error is harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24 (1967); State v. Rice, 184 S.W.3d 646, 670 (Tenn. 2006); State v. Howell, 868 S.W.2d 238, 249 (Tenn. 1993). Our inquiry, therefore, is to determine what harm, if any, the Defendant suffered as a result of the improper joinder of the offenses and whether the gravity of the error warrants a new trial.

As to the nature of the error here, the procedural rules provide that "[n]o judgment of conviction shall be reversed on appeal except for errors which affirmatively appear to have affected the result of the trial on the merits." Tenn. R. Crim. P. 52(a). In State v. Copeland, 226 S.W.3d 287, 302 (Tenn. 2007), we confirmed that "'final judgment . . . shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment.'" Id. (quoting Tenn. R. App. P. 36(b)); see, e.g., State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999) (stating that "the effect of a denial of [the right to severance] is weighed by the same standard as other non-constitutional evidentiary errors: the defendant must show that the error probably affected the judgment before reversal is appropriate"). In considering the whole record, "'[t]he more the proof exceeds that which is necessary to support a finding of guilt beyond a reasonable doubt, the less likely it becomes that an error affirmatively affected the outcome on its merits.'" Toliver, 117 S.W.3d at 231 (quoting State v. Gilliland, 22 S.W.3d 266, 274 (Tenn. 2000)).

The State argues that because of the "strong, affirmative testimony of credible eyewitnesses," the error did not affect the outcome of the trial. The Defendant counters that the evidence supporting the requisite elements of each of the crimes was "hardly overwhelming."

---

[8] Structural errors compromise the integrity of the judicial process and qualify as "structural defects in the constitution of the trial mechanism." State v. Garrison, 40 S.W.3d 426, 433 n.9 (Tenn. 2000).

We recognize that "any time an appellate court conducts harmless error review it necessarily engages in some speculation as to the jury's decisionmaking process; for in the end no judge can know for certain what factors led to the jury's verdict." Sullivan v. Louisiana, 508 U.S. 275, 283 (1993) (Rehnquist, J., concurring)). Still, an appellate court's purpose in a harmless error analysis is to ascertain, to the best of its ability, the actual basis for the jury's verdict. State v. Mallard, 40 S.W.3d 473, 489 (Tenn. 2001). Accordingly, the issue of whether an error is harmless does not turn upon the existence of properly admitted evidence that is sufficient to affirm a conviction. See, e.g., Toliver, 117 S.W.3d at 231. The key question is whether the error likely had an injurious effect on the jury's decision-making process. If the answer is yes, the error cannot be harmless.

With these principles in mind, we turn to the facts surrounding each charge brought against the Defendant. While clearly sufficient to convict on each charge, the nature of the evidence presented against the Defendant as to each and every element of the two robbery charges and the two indictments for aggravated robbery varies in quality and degree. See State v. Denton, 149 S.W.3d 1, 16 (Tenn. 2004). In two of the robberies, there were two employees who witnessed the crimes; in each instance, one of the two victims made a positive identification.[9] In the others, the one employee who was involved identified the Defendant. At trial, however, the jury heard the collective testimony of all four eyewitnesses on each indictment. The similarity of the crimes, where the risk of prejudice is higher, naturally buttressed the State's theory on all charges and their various elements. Because the trial court erroneously refused to sever each indictment and provide separate trials, our obvious concern is whether a single jury could independently assess each charge on its individual merits. Any inference that the Defendant had a propensity to rob cigarette delivery trucks would have been perfectly logical.

In our assessment, the "multiple charges and testimony . . . [inevitably] hung in the backdrop as each particular offense was presented by the State." Id.; see also Spicer, 12 S.W.3d at 448 (observing that the joinder of indictments involving multiple victims is "usually prejudicial" and that the testimony of each victim tends to bolster the testimony of other victims). Evidence of other crimes "easily results in a jury improperly convicting a defendant for his or her bad character or apparent propensity or disposition to commit a crime." Rickman, 876 S.W.2d at 828; see also Denton, 149 S.W.3d at 17 (observing that "common sense tells us that the jury probably believed the defendant had a propensity to commit such acts and that each victim's testimony was made more credible by similar testimony coming from the others"). Moreover, there were other issues as to the third and fourth offenses. The element of fear elevates a theft to robbery. Tenn. Code Ann. § 39-13-401(a). A robbery becomes aggravated when the State proves beyond a reasonable doubt that the Defendant used a weapon. Tenn. Code Ann. § 39-13-402(a)(1), (2). As to the third offense, Yarbrough testified that he specifically recalled seeing the "barrel" of the gun. Mitchell, the victim in the fourth offense, claimed to have seen the "butt" of a gun. See Tenn. Code Ann. § 39-13-402(a)(1). While acknowledging that he was guilty of the theft of cigarettes from Mitchell, the Defendant denied that he was involved in any way in the first three offenses and denied that the proof

_____

[9] While Young could identify the Defendant in the first charge, Crain could not. In the second, Shears provided identification testimony but Richardson did not. Yarbrough and Mitchell were the only witnesses on the third and fourth indictments.

established anything greater than a theft as to the fourth offense. See Tenn. Code Ann. §§ 39-13-401(a), -402(a)(1). Even the charge of aggravated robbery of Mitchell, which was practically conceded by the Defendant except as to the use of a weapon and the element of fear, bears the same taint of propensity evidence.

We cannot conclusively determine how evidence that should not have been admitted affected the jury's decision-making. Further, we cannot be sure as to what evidence might have tipped the scales in favor of the State. As stated, however, we find it unlikely that the jury examined each charge on its own proof as contemplated by the rules. "Under these circumstances, common sense tells us that the jury probably believed the defendant had a propensity to commit such acts and that each victim's testimony was made more credible by similar testimony coming from the others." Denton, 149 S.W.3d at 17. In our view, the erroneous consolidation of the offenses more probably than not affected the verdicts. Tenn. R. App. P. 36(b). As such, the error cannot be classified as harmless. Moreover, lenience in the enforcement of such an established rule of procedure would not encourage future compliance with that rule. We hold, therefore, that each of the four convictions must be vacated and the case remanded for separate trials.

## II. Severance of Defendants

We turn next to the Defendant's contention that the severance of his co-defendant, Finley, who was indicted only in connection with the aggravated robbery of Mitchell and the robbery of Shears and Richardson, was improper. When the State sought consolidation of the offenses, the trial judge erroneously granted the request, as stated, but did so on the condition that the State had to consent to the severance of the charges against Finley. In response, the State, over the objection of the Defendant, agreed to the proposal. The Court of Criminal Appeals found no error. In this appeal under Rule 11, the Defendant argues that the ruling prohibited him from utilizing a "joint defense strategy."

The grant or denial of a motion for severance of defendants is a matter that rests within the sound discretion of the trial court, and this Court will not disturb the trial court's ruling absent clear abuse of that discretion. Hunter v. State, 440 S.W.2d 1, 6 (Tenn. 1969) (superceded by statute on a different point); State v. Burton, 751 S.W.2d 440, 447 (Tenn. Crim. App. 1988). The test to be applied by this Court in determining whether the trial court abused its discretion is whether the Defendant was "clearly prejudiced." Hunter, 440 S.W.2d at 6.

Rule 14 of the Tennessee Rules of Criminal Procedure, as previously cited, also governs issues pertaining to the severance of two or more defendants charged with a crime. Under Rule 14(c)(2)(A), a trial court shall grant a motion to sever after concluding that "severance [is] . . . appropriate to promote a fair determination of the guilt or innocence of one or more defendants[.]"

In this case, the trial court granted Finley's motion for a separate trial based upon the grant of the State's motion to consolidate the charges against the Defendant. Implicit in the ruling is that the trial court found that Finley would not receive a "fair determination of guilt or innocence" if his charges were tried jointly with those of the Defendant. Tenn. R. Crim. P. 14(c)(2)(A). Rule 8(c) provides that defendants can only be joined in a single indictment "if each of the defendants is

charged with accountability for <u>each offense included</u>." Tenn. R. Crim. P. 8(c)(1) (emphasis added). Because Finley was not indicted for the Crain robbery or the Yarbrough aggravated robbery, the severance of his trial, under these circumstances, would have been proper. Further, as stated by the Court of Criminal Appeals, the Defendant did not explain how his preparations might have been impeded by severance. He also did not request a continuance of his own trial, an alternative remedy. The only complaint by the Defendant is that he was prejudiced by the severance because he could not make use of Finley's out-of-court statement. He speculates that the eyewitnesses would have been less likely to identify him if he had been tried jointly with Finley.

The issue regarding severance is inextricably bound to the issue of consolidation of offenses in this case. Because a new trial is warranted for other error, we need not reach any conclusion on the severance of Finley; however, the failure of the trial court to sever the offenses precluded joint trials on the second (Shears/Richardson) and fourth (Mitchell) indictments, and blocked any tactical opportunities (as to identity or relative culpability, for example) either defendant may have had by being tried together. Although the trial court did not necessarily abuse its discretion by granting Finley's motion to sever trials, this issue would not have arisen but for the erroneous consolidation of offenses. And yet, any prejudice to the Defendant suffered as a result of the severance of the co-defendant Finley, would be compounded by the error made in the joinder for trial of the four indictments.

### III. Statements by Co-Defendant

The Defendant next contends that the trial court erred by excluding Finley's statements about the robbery in violation of the rule against hearsay. The statements were made during an interrogation by Sergeants Moses and Max on the day after police caught both co-defendants with stolen merchandise in their car:

| | |
|---|---|
| Sgt. Moses: | Did you participate in the robbery of the Forrest City Grocery truck, which occurred at 264 Scott St., on Wednesday, August 28th, 2003, at or about 1:40 pm?[10] |
| Finley: | Yes. |
| | |
| Sgt. Moses: | Were you armed with a weapon? |
| Finley: | No. |
| | |
| Sgt. Moses: | Was anyone else with you when the robbery occurred? |
| Finley: | Yes, Andre Dotson. |

. . . .

| | |
|---|---|
| Sgt. Moses: | Was Andre Dotson armed with a weapon? |

---

[10] The indictment alleges that the crime was on August 27, 2003. Mitchell testified that he was robbed on that date. Sergeant Moses' question of Finley is the only reference to August 28. August 27, 2003, was, however, a Wednesday.

Finley:        No.

Sgt. Moses:   Describe to us in detail the events surrounding this robbery?
Finley:        Andre and I were in the area of Scott job hunting and stopped at Scott Street
               Tomato House.  I asked the guy out front if they were accepting applications
               and he said no.  We left the warehouse and drove down the street and seen a
               guy pushing some cigarettes in a store.  Andre said for me to pull behind the
               truck and I started putting the cigarettes in the back seat of the car.  When the
               guy came back out the store, we both got in the car and pulled off.  We pulled
               around the corner and stopped and I put the tag back on the car.  We took
               some of the cigarettes off the back seat and put them in the trunk of the car.
               Then we left again and that's when the police saw us and started chasing us.

. . . .

Sgt. Moses:   Did you ever at any time see Andre with a gun or anything that looked like
               a gun?
Finley:        No.

The Defendant concedes that the above statements are hearsay, which is generally inadmissible.  Tenn. R. Evid. 801; 802.  He argues, however, that Finley's statements fall under the hearsay exception for "statement[s] against interest" made by an unavailable declarant.  Tenn. R. Evid. 804(b)(3).

Initially, questions concerning the admissibility of evidence rest within the sound discretion of the trial court, and this Court will not interfere in the absence of abuse appearing on the face of the record.  See State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997); State v. Van Tran, 864 S.W.2d 465, 477 (Tenn. 1993); State v. Harris, 839 S.W.2d 54, 73 (Tenn. 1992).  An abuse of discretion occurs when the trial court applies an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining."  State v. Ruiz, 204 S.W.3d 772, 778 (Tenn. 2006) (citing Howell v. State, 185 S.W.3d 319, 337 (Tenn. 2006)).  "'[D]iscretionary choices are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'"  State v. Lewis, 235 S.W.3d 136, 141 (Tenn. 2007) (alteration in original) (quoting Martha S. Davis, Standards of Review: Judicial Review of Discretionary Decisionmaking, 2 J. App. Prac. & Process 47, 58 (2000) (hereinafter "Davis")).

In order for hearsay to qualify for any exception under Rule 804, the declarant must be "unavailable."  Tenn. R. Evid. 804(a).  When Finley asserted his Fifth Amendment privilege against self-incrimination, he became "unavailable" for the purpose of Rule 804 of the Tennessee Rules of Evidence.[11]  After a declarant has been found to be "unavailable," one of the exceptions in subsection

_____

[11] "'Unavailability of a witness' includes situations in which the declarant: (1) is exempted by ruling of the court on the grounds of privilege from testifying concerning the subject matter of the declarant's statement."  Tenn. R.
(continued...)

(b) must apply for the statement to be admitted as testimony. The Defendant, who intended to use the statement as proof that he was unarmed, argues that Rule 804(b)(3) of the Tennessee Rules of Evidence governs:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

The statements made by Finley fall into three general categories: (1) his admission to participation in the Mitchell robbery just before his arrest; (2) his claim that neither he nor the Defendant had a gun; and (3) his narrative description of the robbery. In order to determine whether the statements in the confession were against Finley's interest, we must examine each specific assertion. See, e.g., Williamson v. United States, 512 U.S. 594, 599-600 (1994) ("The fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts. One of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature.");[12] People v. Campa, 686 P.2d 634, 641 (Cal. 1984) ("[D]eclarations against penal interest may contain self-serving and unreliable information. Thus, an approach which would find a declarant's statement wholly credible solely because it incorporates an admission of criminal culpability is inadequate."); Osborne v. Commonwealth, 43 S.W.3d 234, 241 (Ky. 2001) ("[E]ach statement within the broader narrative must be examined individually to determine whether it is, in fact, self-inculpatory. If not, it is inadmissible.").

First, Finley's confession to the robbery is clearly against his penal interest; however, the statement does not tend to exculpate the Defendant for the robbery. As this Court has previously observed, "the most frequent application of [Rule 804(b)(3)] in criminal cases is the tender of hearsay evidence that an unavailable declarant had confessed to the witness that declarant, not defendant, committed the crime that is the subject of the prosecution." Smith v. State, 587 S.W.2d 659, 660 (Tenn. 1979). Such was not the situation here. Finley did not claim that he alone committed the robbery. To the contrary, he implicated the Defendant. In consequence, Finley's confession would not have tended to prove the Defendant's innocence.

---

[11](...continued)
Evid. 804(a)(1); see also United States v. McCloskey, 682 F.2d 468, 477 (1982) (stating witness is "unavailable" for purposes of Federal Rule of Evidence 804(a)(1) when witness invokes Fifth Amendment Privilege); Breeden v. Indep. Fire Ins. Co., 530 S.W.2d 769, 772 (Tenn. 1975) (accepting the claim of privilege as grounds for unavailability).

[12] We recognize that Rule 804(b)(3) of the Federal Rules of Evidence contains the following sentence not found in the Tennessee Rule: "A statement tending to expose the declarant to criminal liability and offered to exculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." The Supreme Court's analysis of the federal rule is, however, instructive on this particular point.

-12-

Second, Finley's assertion that neither he nor the Defendant was armed is not against the declarant's interest. At the time he made the statements, he faced prosecution for aggravated robbery. An essential element to aggravated robbery is that it be "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402 (2007). Thus, the absence of a gun would tend to exculpate Finley from the crime of aggravated robbery. As the United States Supreme Court has pointed out, "[s]elf-exculpatory statements are exactly the ones which people are most likely to make even when they are false; and mere proximity to other, self-inculpatory, statements does not increase the plausibility of the self-exculpatory statements." Williamson, 512 U.S. at 600.

Finally, whether Finley's account of the robbery is against his interest is a more difficult question. The narrative contains both disserving and self-serving assertions. On the one hand, Finley, arrested as he fled from the Mitchell robbery, admitted his guilt prior to his description of the details of the crime. Thus, his participation in the crime was nearly certain, and his additional assertions were only nominally against his interest. On the other hand, his statement would support the claim that the Defendant was unarmed. To determine whether a statement is predominately self-serving or disserving, we look to the totality of the circumstances in which the statement was made. See Gray v. State, 796 A.2d 697, 704 (Md. 2002) ("In determining the probable state of mind of a reasonable person in the position of the declarant, it is perhaps as important to consider the totality of circumstances under which the statement was made as to consider the contents of the statement."). Because Finley, practically caught red-handed by the police, had already confessed to stealing the cigarettes and was claiming simply that he was unarmed at the time, a fact that might lessen his culpability, it is our conclusion that the narrative description of the robbery was predominately self-serving or, at the least, not against his interest. In our view, the trial court correctly excluded this narrative as hearsay not subject to any exception.

By examining each of the assertions individually, it is our conclusion that the trial court did not abuse its discretion in its determination that Finley's statements were not against his penal interest. The Court of Criminal Appeals properly held that the exclusion of Finley's statements was not error.

### IV. Identification Instruction

The Defendant argues that the trial court did not adequately instruct the jury in regard to identification testimony. He specifically complains that the written identity charge given to the jury is different than the verbal identity charge.

In State v. Dyle, we acknowledged the fallibility of eyewitness testimony and identified a variety of factors worthy of consideration, including (1) the capacity of the witness and the opportunity to observe; (2) the degree of certainty by the witness; (3) any failure on the part of the witness to make the identification; and (4) any occasions when the witness made identifications consistent with that at trial or the surrounding circumstances. 899 S.W.2d 607, 612 (Tenn. 1995). This language is set out in the pattern jury instructions. Tennessee Pattern Jury Instructions, (Crim.) 42.05 (10th ed. 2006). The record here shows that the written instructions, which are submitted to

the jury,[13] are in strict compliance with <u>Dyle</u>: "Again, the state has the burden of proving every element of the crime charged, and this burden <u>specifically</u> <u>includes</u> the identity of the defendant . . . ." (emphasis added).  According to the transcript documents, however, the trial judge omitted the words "specifically includes" in his verbal charge and instead stated as follows: "Again, the state has the burden of proving every element of the crime charged including the identity of the defendant . . . ."

In our view, these instructions vary only slightly in content.  Although the language we used in <u>Dyle</u>, as provided on the written charge, is preferable, the difference is insubstantial.  <u>See Dyle</u>. 899 S.W.2d at 612.    This issue is, therefore, without merit.

### V.  Sufficiency of the Evidence

The Defendant next argues that the State did not prove all elements required for convictions of aggravated robbery and robbery.  We simply disagree.  Because, however, the Defendant is entitled to new trials on grounds that the trial court erred by refusing to grant severances, we will not recount the proof offered at trial in support of each conviction.

In its appeal, the State argues that the Court of Criminal Appeals erred by modifying the conviction for the July 11th incident from robbery to theft.  We have decided to resolve this issue as a part of our remand.

Initially, as we address the issue presented by the State, we keep certain well-established principles in mind.  When considering a sufficiency of the evidence question on appeal, the State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom.  <u>State v. Vasques</u>, 221 S.W.3d 514, 521 (Tenn. 2007).  The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.  <u>Id.</u>  When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Tenn. R. App. P. 13(e); <u>State v. Williams</u>, 657 S.W.2d 405, 410 (Tenn. 1983). The same standard applies even if the evidence is entirely circumstantial.  <u>State v. Brown</u>, 551 S.W.2d 329, 330 (Tenn. 1977).  Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient.  <u>State v. Evans</u>, 838 S.W.2d 185, 191 (Tenn. 1992).

The Defendant was convicted of two counts of robbery, an offense defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in <u>fear</u>." Tenn. Code Ann. § 39-13-401 (2003) (emphasis added).  The "fear" referred to in the statute is a "fear of 'bodily danger or impending peril to the person,' which intimidates and promotes submission to the theft of the property."  <u>State v. Bowles</u>, 52 S.W.3d 69, 80 (Tenn. 2001) (quoting

---

[13] Tennessee Rule of Criminal Procedure 30(c) (2007) provides that in felony trials, "every word of the judge's instructions shall be reduced to writing before being given to the jury."

Britt v. State, 26 Tenn. (1 Hum.) 45 (1846)).  The Court of Criminal Appeals found that the Defendant had fulfilled his burden by demonstrating that the State failed to establish the requisite element of fear on the part of the victim in the July 11th offense because Crain refused to so testify. The majority ruled that the victim had to explicitly acknowledge his fear before the State had met its burden of proof.

As indicated, the elements of any crime may be established by circumstantial evidence. Stinson v. State, 180 S.W.2d 883, 885 (Tenn. 1944).  Indeed, Crain contended in this instance that he was not really afraid: "I was still just mad that it was happening."  When a victim denies fear under circumstances such as these, the determination of this element hinges on a question of witness credibility, which is an issue within the province of the jury.  State v. Wilson, 924 S.W.2d 648, 649 (Tenn. 1996).  The test may be properly described as objective rather than subjective in nature.

Crain testified that he had not seen a weapon, but he had gleaned from the circumstances that there was a "strong possibility" that the Defendant was armed.  He was aware that other drivers from his company had recently been robbed at gunpoint.  According to Crain, the Defendant threatened to shoot and he reached for his pocket or belt.  While Crain did not explicitly acknowledge that he was "afraid," he did testify that he was "more concerned – the fact that if something happened to me, my kids would be without a father."  A reasonable inference is that the actions of the Defendant caused Crain to consider the possibility of his own death.  He acquiesced only after the Defendant threatened to shoot him.  When the robbery was over, Crain directed his co-worker to call the police.

In our view, these are circumstances that the jury could have considered in determining that the victim was placed in fear during the course of the robbery.   As aptly pointed out in the dissent to the Court of Criminal Appeals opinion, "the victim's actions spoke louder than his words."  State v. Dotson, No. W2005-01594-CCA-R3-CD, 2006 WL 3438161, at *18 (Tenn. Crim. App. Nov. 29, 2006) (Williams, J., dissenting); see also People v. Renteria, 393 P.2d 413, 414 (Cal. 1964) (finding that the circumstances surrounding a robbery supported the trial court's finding that the victim "would not have given his employer's money to defendant unless he was in fear, in spite of his 'bravado' answer in court").  Fear could have been inferred from the circumstances.[14]  In our assessment, the jury's task is to determine from all of the evidence whether the victim was placed in fear by the conduct of a defendant or should have been under the circumstances.  A rational jury, weighing all the evidence presented at trial, could have found beyond a reasonable doubt that Crain was actually placed in fear.  See Tenn. R. App. P. 13(e); Williams, 657 S.W.2d at 410.  Thus, the Court of Criminal Appeals erred by reducing Dotson's robbery conviction to theft based upon the content of Crain's testimony.

**CONCLUSION**

---

[14] Mark Twain: "Courage is resistance to fear, mastery of fear - not absence of fear."  Pudd'nhead Wilson, ch. 12 (1894).

-15-

Because the trial court committed error by refusing to grant separate trials on each indictment, and the error was not harmless, we reverse the judgment of the Court of Criminal Appeals. The Defendant must be granted a new trial on each charge. Because the Defendant is entitled to new trials, this Court need not address claims of error pertaining to sentencing. The other issues have been addressed to guide the conduct of the new trials. The costs of this cause are taxed to the State of Tennessee.

_____
GARY R. WADE, JUSTICE