# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned On Briefs July 12, 2011

## STATE OF TENNESSEE v. ANTHONY CLINTON

**Appeal from the Criminal Court of Shelby County**
**No. 09-02125     Chris Craft, Judge**

---

**No. W2010-02157-CCA-R3-CD  -  Filed September 12, 2011**

---

The Defendant, Anthony Clinton, was convicted by a Shelby County Criminal Court jury of robbery, a Class C felony.  See T.C.A. § 39-13-401 (2010).  He was sentenced as a career offender to 15 years' confinement.  On appeal, the Defendant contends that the evidence was insufficient to support his conviction. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Stephen Bush, District Public Defender; Robert Trent Hall, Assistant Public Defender at trial; and Phyllis Aluko, Assistant District Public Defender on appeal, for the appellant, Anthony Clinton.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Dean DeCandia, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to a robbery of an Exxon convenience store on East Shelby Drive in Memphis, Tennessee.  Sophia Chambers testified that she worked at the store on January 2, 2009.  She said she was trained in various aspects of being a sales associate including being trained to pay attention to a customer's appearance and in procedures to follow during a robbery.

Ms. Chambers testified that because her shift was to end soon, she placed the cash register money into the store safe at approximately 8:50 p.m., leaving only sixty dollars in

the register.  She said no customers were in the store.  She stated that after she placed the money in the safe, a young boy and a teenage girl entered the store.  She said the Defendant entered the store after them but he did not appear to be with the younger customers.

Ms. Chambers testified that the Defendant "caught" her eye as he walked through the store.  She said the Defendant watched the young boy and girl and walked back and forth in front of one of the drink coolers.  She said that the young customers approached the counter to pay for the items they selected and that the Defendant walked behind them as though he was ready to pay for an item.  She said that the Defendant hovered over the young customers as he moved closer to the counter and that his actions scared her.

Ms. Chambers testified that after the teenage girl paid for the items and the cash register was open, the Defendant shoved the young boy, jumped onto the counter, and reached into the cash register.  She stated that the Defendant pushed her and that she slammed the cash register drawer shut on his arm many times.  She stated the Defendant fought her with the elbow of the arm caught in the cash register and with his other arm to make her back away.  She said that she continued to push the cash register drawer closed while the Defendant's arm was still caught in the drawer but that the Defendant was able to remove his arm and take money from the drawer before she could close the cash register.  Just before the Defendant got the money, he had moved his arm enough to cause Ms. Chambers to mash two of her fingers as she tried to close the cash register.

Ms. Chambers testified that she was afraid of the Defendant and thought he wanted to attack her but that she realized the Defendant "just wanted the money."  She said she did not attempt to retrieve the money from the Defendant because she was afraid.  She stated that after the Defendant "jumped back over the counter"and ran to the door to leave, he gave her an intimidating look that scared her.  Ms. Chambers said that she did not know what the Defendant was going to do and that she just stood behind the cash register and watched the Defendant. Ms. Chambers stated that after the Defendant left the store, she went to the door to look outside and saw the Defendant sitting in a "silver-grayish" Oldsmobile with Tennessee tag number 228SWW.  Ms. Chambers said the Defendant drove northbound on Kirby toward Raines.

Ms. Chambers testified that after the Defendant drove away, she locked the doors to the store and asked if the boy and girl would stay to speak with the police.  She went back to the cash register and determined that a twenty-dollar bill was missing from the register.  She spoke with a 9-1-1 dispatcher and provided a description of the man and his car, the time he entered the store, and the direction in which he drove.  She said the police arrived approximately ten minutes after she was robbed with a suspect in the back seat of the police

cruiser. She said the police asked her to identify the man, whom she recognized as the man who robbed her.

Ms. Chambers testified that after the robbery, she remained scared, did not return to work for one week, and stayed home most of that week. She said she was too frightened to go back to any Exxon convenience store during that time. Ms. Chambers said she was scared because she did not know if someone would target her or if the Defendant remained in jail. She stated that she used Exxon's mental health counseling service for two days after the robbery and that her hand was sore for three days.

On cross-examination, Ms. Chambers testified that there were eight or more surveillance cameras inside the store. She said approximately fifteen police officers were at the store after the robbery and recalled speaking with Officers Robinson and Valentine. She said that when she gave her statement to the police the night of the robbery, the police were aware of the eight surveillance cameras. She said she did not know if the police gathered the video recordings from the surveillance cameras because after the police arrived, she identified the Defendant in the backseat of the police cruiser, the Defendant was placed in custody, and she drove with her friend, Latoya Boatwright, to the police station to make her statement.

Ms. Chambers testified that while she and the Defendant struggled over the cash register, the Defendant jumped onto the counter but did not make it behind the counter. She said that when she said "over the counter" in her formal police statement, she meant that the Defendant had to jump over the shelves in front of the counter.

Bryana Polk testified that on January 2, 2009, she was eighteen years old and that her brother was eight years old. Ms. Polk said that her mother drove them to the Exxon convenience store the night of the robbery but that her mother stayed inside the car while she and her brother went inside. She said the Defendant was the only other customer in the store while they were there. Ms. Polk stated that the Defendant caught her attention because he was a "big guy and tall." She said she noticed that the Defendant looked at her and that he paced around without picking up anything. Ms. Polk said that when she and her brother went to the counter to pay for their items, the Defendant came behind her and made her feel uncomfortable as he moved closer. She stated that she handed the cashier the money and that as the cash register opened, the Defendant pushed her brother, "jumped on the cash register," and tried to get the money. She stated that the cashier slammed the cash register door on the Defendant's hand and attempted to push the register door closed but was unable to close it because the Defendant pushed her. Ms. Polk did not see the Defendant get any money before he left the store.

On cross-examination, Ms. Polk testified that the police responded quickly and that she gave one of the officers her name, telephone number, address, and her brother's name but that she was never asked to give a signed, written statement. She stated that to her knowledge, neither her brother nor her mother was asked to give a signed, written statement. Ms. Polk said that she saw surveillance cameras inside the store but that she did not see any of the surveillance footage. She said the police did not dust the scene for fingerprints in her presence. Ms. Polk confirmed that after the Defendant jumped onto the counter, he remained on the counter during the robbery.

Memphis Police Officer Herman Robinson testified that on January 2, 2009, he received a radio communication to be on the lookout for a late model silver, four-door Oldsmobile Intrigue driven by a black male. Officer Robinson said he saw a car matching the description approximately six minutes later. Officer Robinson stated that he activated his blue lights and honked his horn and siren. The car stopped and Officer Robinson identified the Defendant as the driver. Officer Robinson said he found a twenty-dollar bill in the Defendant's pants pocket. The twenty-dollar bill was received as an exhibit.

Officer Robinson testified that he did not attempt to question the Defendant but that the Defendant volunteered a statement. Officer Robinson stated that the Defendant said Robinson "was a real police" and that Officer Robinson was "good" and enjoyed his job. He stated that the Defendant did not make any gestures but appeared to be "spaced out or zoned" out. Officer Robinson said he needed to investigate the robbery and took the Defendant to the store. He spoke with the officers who took the report at the store. Officer Robinson said Ms. Chambers identified the Defendant without hesitation as the person who robbed her. Officer Robinson said Ms. Chambers stated that the Defendant was able to get the money by shoving her backwards and that she injured her hand during the robbery.

On cross-examination, Officer Robinson testified that other officers were present when he arrived at the scene. He said that he did not collect any other evidence related to this case and that he never entered the store.

The Defendant contends that the evidence was insufficient to support his conviction because it did not establish that he knowingly took items from the person of Sophia Chambers by use of violence or by putting her in fear. The State argues that the evidence was sufficient to support the Defendant's conviction. We agree with the State.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Williams, 657 S.W.2d 405,

410 (Tenn. 1983). This means that we may not reweigh the evidence but must presume that the trier of fact has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Any questions about the "credibility of the witnesses, the weight to be given to their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." State v. Dotson, 254 S.W.3d 378, 395 (Tenn. 2008) (citing State v. Vasques, 221 S.W.3d 514, 521 (Tenn. 2007)); see State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401. "[A] person acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." T.C.A. § 39-11-106(a)(18) (2010). "[A] person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Id. § -106(a)(20). Our supreme court has held that "the plain meaning of the element of violence as used in the offense of robbery . . . is evidence of physical force unlawfully exercised so as to damage, injure or abuse." State v. Fritz, 19 S.W.3d 213, 217 (Tenn. 2000). Fear as an element of robbery "is fear of present personal peril from violence offered or impending" and "of bodily danger or impending peril to the person." State v. Bowles, 52 S.W.3d 68, 80 (Tenn. 2001) (quoting Britt v. State 26 Tenn. (7 Hum.) 45 (1846)). It is the existence of violence or fear that elevates an offense from theft to robbery. Bowles, 52 S.W.3d at 80; see James v. State, 385 S.W.2d 86, 88 (Tenn. 1964).

Taken in the light most favorable to the State, the record reflects that Ms. Chambers opened the cash register and that the Defendant jumped onto the counter and stuck his arm into the cash register. The Defendant and Ms. Chambers struggled over the cash register, and the Defendant pushed Ms. Chambers. During the struggle, Ms. Chambers slammed her own hand into the cash register. Ms. Chambers stated she was afraid of the Defendant and thought that he would attack her. She did not attempt to retrieve the money taken by the Defendant because she was afraid.

The record reflects that the Defendant placed another in fear during an intentional and knowing theft of property. See Fritz, 19 S.W.3d at 217 (Tenn. 2000); see Bowles, 52 S.W.3d at 80. The Defendant argues that Ms. Chamber's actions of struggling with the Defendant undermine her assertions that she was afraid, but a person can engage in a struggle and still be placed in fear. Ms. Chambers testified that she was in fear and afraid of the Defendant. She did not attempt to retrieve the money taken by the Defendant because she was afraid.

Any questions about the weight to be given to a witness's testimony and "the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." Dotson, 254 S.W.3d at 395 (Tenn. 2008) (citing State v. Vasques, 221 S.W.3d 514, 521 (Tenn. 2007)). A rational trier of fact could have found beyond a reasonable doubt that Ms. Chambers was placed in fear.

The record also reflects that the Defendant used violence during an intentional or knowing theft of property from the person of another. See Fritz, 19 S.W.3d at 217. In Fritz, as a convenience store clerk opened the cash register for a transaction with a customer, the defendant "shoved" the clerk "in an aggressive manner," which caused the clerk to fall backward into a store display. Id. at 216. The clerk testified that he "was stunned and afraid but not hurt." Id. The defendant reached into the cash register, took approximately forty dollars and left the store. Id. Our supreme court held that the evidence established "the [robbery] was committed with violence, that is, physical force unlawfully exercised . . . as to injure, damage, or abuse." Id. at 217. The facts are similar in this case. As the cash register opened, the Defendant jumped onto the counter and stuck his hand into the register. The Defendant and Ms. Chambers struggled over the cash register and the Defendant shoved Ms. Chambers. Ms. Chambers shut the cash register door on the Defendant's hand and the Defendant continued to push Ms. Chambers. A rational trier of fact could have found beyond a reasonable doubt that the Defendant committed the offense with violence.

The Defendant also contends that the evidence was insufficient to support his conviction because the eye witness identifications of the Defendant were prejudicially tainted and overly suggestive in that the police used a single-suspect-show-up identification process at the crime scene. The State argues the identifications of the Defendant were sufficient to support the Defendant's conviction. We agree with the State.

First, we note the Defendant did not seek to suppress the identifications at the trial. In any event, the record reflects that Ms. Chambers identified the Defendant during the trial as the man who entered the convenience store, jumped on the counter, struggled with her to take money from the cash register, took twenty dollars, and left the store. Ms. Polk identified the Defendant as the person that entered the store, jumped on the counter, struggled with the cashier to obtain money from the register, and left the store. The fact that Ms. Polk did not actually observe the Defendant in the act of taking money from the register is not relevant to her identification of him as the perpetrator. A rational trier of fact could have found that the witnesses made proper identifications of the Defendant, and this court will not disturb the jury's conclusion that the witnesses made proper identifications of the Defendant. We conclude that a rational trier of fact could have found beyond a reasonable doubt the elements of robbery and that the witnesses made proper identifications of the Defendant. We hold that the evidence is sufficient to support the Defendant's conviction.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE