IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 4, 2009

**STATE OF TENNESSEE v. JEREMY GARRETT**

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 04-07755, 04-05871      W. Otis Higgs, Jr., Judge**

_____

**No. W2007-02700-CCA-R3-CD   -   Filed November 19, 2009**

_____

In two separate indictments, the defendant, Jeremy Garrett, was charged with aggravated robbery, a Class B felony; first degree felony murder; and especially aggravated robbery, a Class A felony. The trial court subsequently granted the State's motion to consolidate the two indictments without conducting a hearing, and, following a jury trial, the defendant was convicted as charged. He was subsequently sentenced to concurrent sentences of eight years, life, and fifteen years for the respective convictions. On appeal, the defendant raises two issues for our review: (1) whether the trial court erred in granting the State's motion to consolidate the two indictments without conducting a hearing; and (2) whether the evidence is sufficient to support the conviction for first degree felony murder. Following review of the record, we conclude that, although the trial court did err in failing to conduct a hearing on the motion to consolidate, the error was harmless. Further, we conclude that the evidence presented was sufficient to support the conviction. Accordingly, the judgments of conviction are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

James E. Thomas (on appeal) and Tyrone Paylor and Robin Steward (at trial), Memphis, Tennessee, for the appellant, Jeremy Garrett.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; William L. Gibbons, District Attorney General; and James Wax and Paul Hagerman, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

The defendant's convictions in the case arise from his involvement in two separate car thefts, one of which resulted in the death of the owner, on two subsequent days. On March 28, 2004, the defendant, Tommy Turley, and Kelly Richardson were driving around looking for rims to steal. They observed Mexwayne Williams as he exited a tobacco store and walked to his Grand Marquis. Williams was approached by two of the men, one of which "put a gun to [his] chest and carjacked [him]." According to Turley, he was the individual who placed the gun to Williams' chest and took the keys from Williams. He then gave the keys to Richardson and got into the passenger seat. The two left the parking lot. According to Turley, they followed the defendant to his uncle's home in Fayette County, where the rims were removed from Williams' car. They were subsequently sold, and the money was divided among the three men. Williams was unable to positively identify the defendant as one of the men who robbed him.

The following day, the defendant and Turley were in the same neighborhood with the intention of robbing individuals of the rims on their vehicles. On this occasion they were in a car driven by Corey Richmond. While driving, they spotted the victim, Dexter Birge, in a Yukon Sports Utility Vehicle (SUV). The group followed the victim until he stopped at a Dollar General Store. Once the group pulled into the parking lot, the defendant and Turley exited the vehicle. After watching the victim exit the store, Turley pulled a gun and demanded the keys to the SUV. However, a struggle ensued when the victim fought back. Turley gained control of the keys, which he threw to the defendant, and continued to struggle with the victim, hitting him in the head with the gun. At some point, the defendant approached, and a gunshot was fired. A witness entering the Dollar General Store as the victim exited, observed a man approach and grab the victim and the subsequent "wrestling" which occurred. The witness also observed a second man come from the side of the building, approach the victim, and point at him. The witness then heard one shot, although he did not see the actual weapon. Moments later, the victim, who had been shot, entered the store. He was subsequently taken to the hospital and died as a result of a gunshot wound to his chest.

Following the shooting, Turley and the defendant entered the victim's Yukon SUV, with the defendant driving, and left the scene. They then drove to a house belonging to the defendant's uncle, where they met Richmond. One rim was removed from the SUV and placed in Richmond's car. The three men then left. On the return trip, Richmond heard Turley ask the defendant why he shot the victim. The defendant responded that he was "whipping you. I had to get him up off you."

Later that day, police arrived at the home of Jeremy Waller, the defendant's uncle, after activating the OnStar tracking device in the Yukon. Waller indicated that on the previous day, the defendant and "Twin" arrived at his house in a black car. He said that they removed the rims from the black car, which was still located on his property. Waller also told police that he saw the defendant, "Twin," and "Corey" at his home on March 29, and that they brought the Yukon there. According to Waller, he told the men to remove the vehicle from his property.

Following an investigation, the defendant, Turley, and Richmond were questioned. The defendant gave a statement to police in which he acknowledged being with "Twin" on the day the

victim was shot. However, according to his statement, "Twin" approached the victim as the two were walking by the Dollar General and initiated the robbery without the defendant's knowledge. Moreover, he said that "Twin" shot the victim. The defendant said he went into a "state of shock" and acknowledged that he took the keys and drove away in the stolen SUV. Turley also gave a statement to police, although the statement differed somewhat from his trial testimony. According to Turley, he could not remember giving the statement because he was high on cocaine at the time. Richmond also gave a statement to police, in which he denied all involvement. However, at the defendant's trial, he acknowledged that he drove the defendant and Turley to the Dollar General, was aware of the plan to rob the victim, heard the gunshot, and later met the defendant and Turley at the house belonging to the defendant's uncle.

Based on the above, the defendant was indicted in two separate cases. In Case No. 04-05871, the defendant was charged with one count of aggravated robbery against Mexwayne Williams. In Case No. 04-07755, the defendant was charged with one count of felony murder in the perpetration of a robbery and with one count of especially aggravated robbery for the actions against Dexter Birge. Subsequently, the State filed a motion to consolidate the two indictments, asserting in their motion that a common scheme or plan existed. The defendant filed a response objecting to the consolidation. Without conducting a hearing, the trial court entered an order granting the motion.

Following a jury trial, the defendant was convicted as charged of all three counts. He was sentenced to concurrent sentences of life in prison for the felony murder conviction, eight years for the aggravated robbery, and fifteen years for the especially aggravated robbery. Following the denial of his motion for new trial, the defendant filed the instant timely appeal.

**Analysis**

On appeal, the defendant has raised two issues for our review. First, he contends that the trial court erred in granting the State's motion to consolidate the two indictments for trial without conducting a hearing following his objection. He also contends that the evidence presented was not sufficient to support his conviction for first degree felony murder.

## I. Consolidation

First, the defendant asserts that the trial court committed reversible error with its decision to consolidate the two indictments for trial without conducting a hearing after the defendant objected. The State concedes that the trial court erred, and we agree. However, after review, we conclude that the error was harmless.

When a defendant seeks severance, the burden is on the State to show that the offenses should not be severed. *State v. Denton*, 149 S.W.3d 1, 13 (Tenn. 2004). The issue of the propriety of a trial court's consolidation of indictments and severance of charges is reviewed on appeal for abuse of discretion. *Spicer v. State*, 12 S.W.3d 438, 442 (Tenn. 2000). The trial court's resolution

of the issue will be reversed only when that court (1) applied an incorrect legal standard or (2) reached an illogical decision that resulted in injustice to the complaining party. *Id*.

Consolidation of multiple indictments, returned against a defendant, into one trial is governed by Rule 8(b)(2) of the Tennessee Rules of Criminal Procedure, which provides that the offenses may be joined if they are "of the same or similar character." However, "a defendant has a right pursuant to Rule 14(b)(1) of the rules to the "severance of offenses permissively joined [under Rule 8(b)(2)], unless the offenses are part of a common scheme or plan and the evidence of one offense 'would be admissible upon the trial of the other.'" *Spicer*, 12 S.W.3d at 443 (quoting Tenn. R. Crim. P. 14(b)(1)); *see also State v. Tolliver*, 117 S.W.3d 216, 228 (Tenn. 2003).

In *Spicer*, the Tennessee Supreme Court made clear that "when a defendant objects to a pre-trial consolidation motion by the state, the trial court must consider the motion by the severance provisions of Rule 14(b)(1), not the 'same or similar character' standard of Rule 8(b)." *Spicer*, 12 S.W.3d at 443. "The primary inquiry into whether a severance should be granted under Rule 14 is whether the evidence of one crime would be admissible in the trial of the other if the two counts of the indictment had been severed." *State v. Burchfield*, 664 S.W.2d 284, 286 (Tenn. 1984). When there is an objection to a motion to consolidate, the State bears the burden of producing evidence to establish that the consolidation was proper. *Tolliver*, 117 S.W.3d at 228. The procedure has been well-established that before a trial court may deny a severance request, it must hold a hearing on the motion and conclude from the evidence and argument presented at the hearing that: (1) the multiple offenses constitute parts of a common scheme or plan; (2) evidence of one of the offenses is relevant to some material issue in the trial of the other offenses; and (3) the probative value of the evidence of the other offenses is not outweighed by the prejudicial effect that admission of the evidence would have on the defendant. *Spicer*, 12 S.W.3d at 445; *see also* Tenn. R. Evid. 404(b)(3). From this, it is apparent that the prosecution must produce evidence that consolidation is proper. *Tolliver*, 117 S.W.3d at 228.

In this case, it is not disputed that the defendant objected to the consolidation and that the trial court failed to conduct a hearing on the motion. In fact, at the motion for new trial hearing, the trial court acknowledged that no evidentiary hearing occurred. Additionally, the order granting the motion made no findings other than the general statement that "from all of which it appears that the offenses charged in the captioned indictments constitute parts of a common scheme a plan and/or the offense charged are of the same or similar character, and that the motion of the State is well taken." We agree with the defendant that the statements made by the State in the motion supporting consolidation do not constitute evidence.

In *Spicer*, our supreme court mentioned that the consolidation/severance issue should be resolved from "the evidence and argument" presented in the pretrial hearing. *Id*. at 445. The court further stated:

> In all cases in which the state seeks to consolidate the multiple offenses by pre-trial motion over the objection of the defendant, the state must bring forth sufficient

> evidence at the hearing to establish that specific acts constitute parts of a common scheme or plan.

*Id*. at 447. Indeed, the court held that the trial court's denial of severance despite the State's failure to present "evidence" in the pretrial hearing was an abuse of discretion. *Id*. Similarly, we must conclude that the trial court's decision in the absence of a hearing was an abuse of discretion and, thus, was error.

However, the error committed is subject to harmless error analysis. *See* Tenn. R. Crim. P. 52(a); *see also Spicer*, 12 S.W.3d at 447. In this situation, harmless error analysis is divided into two segments.

### a. Pretrial Level

Because the determination of whether multiple charges based on alleged multiple offenses should be joined or separated for trial establishes a format for trial, the issue obviously must be presented and resolved before trial. *Bruce v. State*, 378 S.W.2d 758, 760 (Tenn. 1964). "Because the trial court's decision of whether to consolidate offenses is determined from the evidence presented at the [pretrial] hearing, appellate courts should usually only look to that evidence, along with the trial court's findings of fact and conclusions of law, to determine whether the trial court abused its discretion by improperly joining the offenses." *Spicer*, 12 S.W.3d at 445. When the pretrial proceeding reflects that the State established a proper basis for denying severance, the appellate court, by looking only to that evidence as directed by our supreme court, may be able to determine that the denial of severance, despite the trial court's use of an incorrect legal standard, was justified. As noted, the State must establish that the offenses sought to be joined are part of a common scheme or plan and that the evidence of one would be admissible in the trial of the other. Both of these factors are "rather complex and can involve intricate factual determinations that typically cannot be made without an evidentiary basis." *State v. Jovan Xavier Moore*, No. M2007-02515-CCA-R3-CD (Tenn. Crim. App. at Nashville, Sept. 16, 2008), *perm to appeal denied* (Tenn. 2009). Because no hearing was held in the instant case, no evidence or argument was available and, thus, the trial court was deprived of any basis for denying severance based up Rule 14(b)(1) principles. Furthermore, this court is precluded from discerning a Rule 14(b)(1) basis for the denial as well. Accordingly, we cannot conclude that, at the pretrial level, the error was harmless.

### b. Trial Level

We next turn to an analysis of whether the errors are harmless in light of the evidence presented at trial. At this level, "[i]n most severance cases, 'the line between harmless and prejudicial error is in direct proportion to the degree . . . by which proof exceeds the standard required to convict.'" *Spicer*, 12 S.W.3d at 447-48. Our supreme court has further said that "[t]he key question [in addressing the harmlessness of a consolidation error] is whether the error likely had an injurious effect on the jury's decision-making process." *State v. Dotson*, 254 S.W.3d 378, 389 (Tenn. 2008).

In the present case, the evidence presented was more than sufficient to support the convictions, and we conclude that no "injurious effect" resulted to the defendant. The evidence presented with regard to all the charges was essentially of the same evidentiary quality. The defendant was implicated by a co-defendant who was present during the commission of all the crimes. As noted *infra*, that co-defendant's testimony was adequately corroborated by other evidence in the record. Additionally, the testimony of the defendant's uncle places the defendant and the co-defendants in the presence of the stolen vehicles shortly after the commission of each incident. We conclude that there is no basis for saying that any of the offenses, when compared to the others, evinces a weakness that suggests the jury convicted on the basis of the defendant's propensity to steal cars in order to obtain the rims. As such, the error which occurred was harmless, and the defendant is not entitled to relief on this issue.

## II. Sufficiency of the Evidence

Next, the defendant contends that the evidence presented is not sufficient to sustain his conviction for first degree felony murder. Specifically, he contends that the conviction cannot stand, as it is based solely on the uncorroborated testimony of co-defendants Turley and Richmond.

In considering the issue of sufficiency of the evidence, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt so that, on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

In Tennessee, it is well established that a conviction may not be based solely upon the uncorroborated testimony of an accomplice. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001) (citations omitted). An accomplice is a person who "knowingly, voluntarily, and with common intent participates with the principal offender in the commission of the crime alleged in the charging

instrument." *State v. Griffis*, 964 S.W.2d 577, 588 (Tenn. Crim. App. 1997). The question of who determines whether a witness is an accomplice depends upon the evidence introduced during the course of the trial. *Bethany v. State*, 565 S.W.2d 900, 903 (Tenn. Crim. App. 1978). When the facts are undisputed regarding a witness's participation in a crime, it is a question of law for the trial court. *State v. Robinson*, 239 S.W.3d 211, 225 (Tenn. Crim. App. 2006). In the instant case, the trial court made the determination, as a matter of law, that both Turley and Richmond were accomplices, and that fact is not disputed. The Tennessee Supreme Court has previously described corroboration as:

> some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence.

*State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994). It is a jury question whether sufficient corroboration exists. *Id.*

First degree felony murder is "[a] killing of another committed in the perpetration of or attempt to perpetrate any . . . robbery. . . ." T.C.A. § 39-13-202(a)(2) (2006). The mental state required for conviction of felony murder is the intent to commit the underlying offense. *Id.* at (b).

Review reveals that the defendant's argument is misplaced, as the record contains sufficient corroboration of the accomplices' testimony. The testimony of both co-defendants was corroborated by Jeremy Waller, who testified that all three men were at his home on March 29, 2004, and that the stolen SUV, as well as the car stolen from Mexwayne Williams, was left on the property. While Waller's testimony alone may "not be adequate" to support the conviction, it is sufficient to establish that a crime was committed and that the defendant was involved. Moreover, Turley's testimony of what occurred in the parking lot is consistent with the testimony of Mr. Williams, despite the fact that Mr. Williams could not identify either perpetrator. Nonetheless, he testified that one man was "wrestling" with the victim when a second man approached and shot the victim.

Additionally, the defendant admitted that he drove the stolen SUV from the scene of the crime. His statement that he was not aware of the intent to rob the victim until after Turley had already done so was heard by the jury. Based upon their verdict of guilty, the jury found that the defendant's statement was not credible.

In the light most favorable to the State, the evidence is sufficient. Both co-defendants implicated the defendant, as well as themselves, in the perpetration of this crime. Both indicated that each of the three men in the car was aware that a robbery was about to be committed and

intentionally followed the victim to Dollar General in order to steal his vehicle for the rims. Because this occurred and the victim was killed during the robbery, it is irrelevant which of the three actually fired the shot. As such, we conclude the evidence was sufficient to support the conviction.

## Conclusion

Based on the foregoing, the judgments of the trial court are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE