IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 6, 2009

**STATE OF TENNESSEE v. CARLOS KENNEDY**

**Direct Appeal from the Circuit Court for Chester County**
**No. 08-CR-24      Donald Allen, Judge**

_____

**No. W2009-00004-CCA-R3-CD  - Filed August 18, 2010**

_____

The Defendant-Appellant, Carlos Kennedy, was convicted by a jury in the Circuit Court of Chester County of rape of a child, a Class A felony, attempted rape of a child, a Class B felony, assault, a Class A misdemeanor, and coercion of a witness, a Class D felony.  He was sentenced to twenty-five years for rape of a child, ten years for attempted rape of a child, eleven months and twenty-nine days for assault, and four years for coercion of a witness. The trial court ordered the sentence for attempted rape of a child to be served consecutively with the sentence for rape of a child.  It also ordered the sentences for assault and coercion of a witness to run concurrently with the conviction for rape of a child.  Thus, Kennedy received an effective sentence of thirty-five years in the Tennessee Department of Correction. On appeal, Kennedy claims: (1) that the conviction for rape of a child is not supported by sufficient evidence; (2) the trial court erred by prohibiting defense counsel from questioning the victim and her mother about a prior allegation of sexual abuse made by the victim; and (3) the trial court erred by imposing consecutive sentencing.  Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed.**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

George M. Googe, District Public Defender; Kandi K. Collins, Assistant Public Defender, for the Defendant-Appellant, Carlos Kennedy.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; James G. Woodall, District Attorney General; and Brian M. Gilliam, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The indictment alleged that each of the charged offenses occurred on or about January of 2008 in Chester County. Kennedy was charged with the rape and attempted rape of his stepdaughter, G.U.[1] ("the victim"). He was also charged with assaulting his wife, Rachel Kennedy ("Rachel"), and coercing her as a witness.

**Trial.** Dr. Lisa Piercy, an expert in the areas of pediatrics and child abuse, testified that on January 17, 2008, she examined the victim, age eight, at the Madison County Child Advocacy Center. Dr. Piercy said the victim disclosed that she was inappropriately touched by Kennedy at their home in Chester County. Dr. Piercy said the victim began living at that home in December of 2007. Dr. Piercy offered the following testimony regarding the sexual abuse described by the victim:

> I always write down direct quotes and [the victim's] quote was: "He stuck his private part in my butt and on my too-too. He rubbed my too-too with his hand. I had to suck his private part and that stuff would come out in my mouth and I would have to go brush my teeth." I asked her what kind of stuff came out and she said that gooey white stuff. Then she spontaneously added that Carlos would make her go get the Vaseline, lotion or Desitin so that he could put that on his private part before he stuck it in her butt. She recollected that that hurt when he did that and that sometimes she would have trouble holding the poop and pee in.

Dr. Piercy said the victim asked her to draw a picture of a female genitalia. Upon drawing the picture, the victim marked with a pen where she was touched by Kennedy. The picture was admitted as exhibit 1 to the trial. In addition, the victim "spontaneously . . . drew a picture of a penis as well [as] stick figurines with emphasized genitalia." Dr. Piercy said the victim also "drew a small stick figurine and a large stick figurine with dark marks and emphasis on the genitalia of both and she said, 'That's me and that's Carlos.'" Dr. Piercy testified that the victim's ability to provide specific details of sexual activity suggested that her credibility was good and that she had personal experience.

Dr. Piercy testified that she also spoke with the victim's mother, Rachel. Dr. Piercy stated:

> When I asked mother about how she found out about the event or events, mother said that on January the 10th, she heard [the victim] crying from

---

[1]It is the policy of this Court to refer to a minor victim of sexual abuse by his or her initials.

another room and knew that Carlos was spanking her for loosing [sic] a set of car keys. When she went into the room that they were in, she said that Carlos was beating her butt with a belt and had her panties and pants pulled down. She reported that Carlos was very angry and tearing up her toys and throwing them and yelling at her because she had lost the car keys. Mom then said that [the victim] then yelled back that if you don't stop, I'm going to tell mom what you did to me. Mom reports that [the victim] went on to say that Carlos sticks his dick in me. Mom said that [the victim] had also told her that Carlos had sex in her butthole while she was on all fours and then named different rooms of the house that that had occurred in.

Dr. Piercy said she did not ask Rachel how the victim learned the word "dick."

Dr. Piercy testified that she conducted a physical examination of the victim. She found that the victim had a "tear through the hymen all the way to the base of the vagina[.]" The victim also had a "whitish thickened scar" on her anus. Dr. Piercy testified that these findings were extremely abnormal and consistent with what the victim said occurred. Dr. Piercy stated:

> My conclusions was [sic] sexual abuse based on the findings of the full thickness transection in the posterior rim or bottom half of the hymen as definitive evidence of blunt force penetrating trauma to the vagina. Additionally, the lesion on the anus is consistent with scar formation indicating chronic anal penetration.

She explained that the term "chronic" means healed. For academic purposes, Dr. Piercy examined the victim again a week after the first examination because the victim's injuries were "so unusual." She said the results were exactly the same.

On cross-examination, Dr. Piercy testified that the victim's use of the word "dick" was uncommon given her age. She did not recall asking the victim about her past exposure to adult sexual interaction. Dr. Piercy said the victim told her that the last incident of sexual abuse occurred when she was seven. The victim turned eight on December 29, 2007. Dr. Piercy was unsure when the scar on the victim's anus developed. She did not search the victim for the presence of DNA evidence because such an examination must be performed within 72 hours of sexual contact. Dr. Piercy said the injuries suffered by the victim could have been caused by digital penetration.

The victim testified that she received a "bad touch" from Kennedy while living in Chester County in the early part of January of 2008. She was watching a movie in the living

-3-

room with Kennedy when he started to "pinch and squeeze" the inside of her vagina and anus with his hand. Kennedy touched her about twenty times. The victim then walked to her bedroom. She said Kennedy followed her and asked to put his penis inside of her. The victim said "no" and started to cry. She stated, "I had to say no four times for him to get out." The victim testified that Kennedy referred to his penis as his "dick."

The victim told Rachel about the incident three days after it occurred. The victim said she waited three days because she worried about getting into trouble. She said Kennedy threatened to kill her and Rachel if the victim told anyone about the incident. The victim eventually told her mother about what transpired after an argument with Kennedy. That night, the victim heard Kennedy hit Rachel about five or ten times outside of her room. She stated, "I just knew he hit her because I heard them arguing and pushing around." The victim said Rachel called the police the next morning.

On cross-examination, the victim again described the night that she was raped in Chester County. The victim was lying on the couch with Kennedy when he started to rub inside of her clothes with his hand. The victim got off the couch and sat on the floor. Kennedy told her to come back to the couch, and he began touching her again before she went to her bedroom. Defense counsel asked, "He did not stick his penis in your butt; correct?" The victim responded, "Yes, ma'am." Defense counsel did not further question the victim about whether Kennedy penetrated her with his penis on that night.

Rachel testified that she married Kennedy in 2005. From December of 2007 to January of 2008, they rented a house in Chester County. Rachel testified that on January 10, 2008, the victim disclosed for the first time that she was raped by Kennedy. Earlier that day, Rachel and Kennedy searched the home for misplaced car keys. Rachel said the victim was the last person to handle them; therefore, Kennedy thought she was responsible for losing them. While searching for the keys, Rachel heard the victim crying and screaming. Rachel went into her bedroom and saw Kennedy spanking the victim. Rachel stated that Kennedy "had spanked her so hard that it left marks that were bleeding." Rachel started to argue with Kennedy. She stated:

> I went in the other children's room which was caddy corner to her room and . . . Carlos came out and he said, you know, I think [the victim] hates me and I said, "No, she doesn't." He said, "I just have a feeling that one day she's going to come up with some bull crap."

Upon further questioning, Rachel clarified that Kennedy actually said, "'Some bullshit like I molested her or something to get me in trouble one day.'" Rachel was surprised by this statement, and she and Kennedy went to speak with the victim. The victim threatened to

reveal what Kennedy had done to her. When Rachel questioned the victim about what Kennedy had done, the victim said, "'He sticks his dick in me.'" Rachel stated:

> I just kept saying, "What are you talking about?" And Carlos just said, "See. I told you. I told you she was going to do this one day." And he walked out of the room and I grabbed [the victim] and I took her outside on to the carport.

Rachel believed that the victim was telling the truth. Rachel stated, "Carlos is not circumcised and so the way [the victim] described his private parts was exactly that." Rachel took the victim to her room and locked the door. Rachel said Kennedy was extremely upset. He yelled at Rachel and threw various objects around the house. Kennedy also threatened to kill Rachel and the victim if they told anyone about what occurred. Rachel believed that Kennedy's threat was serious.

On cross-examination, Rachel said she told the victim that she was sexually abused as a child by her father. This conversation occurred after the victim revealed she was sexually abused by Kennedy. Rachel disclosed her own past abuse because she did not want the victim to feel embarrassed or to believe that the abuse was her fault. Rachel said the victim never bathed with Kennedy. Rachel testified that she was afraid to call the police because of the threats made by Kennedy.

Gwen Arnold testified that she was Rachel's mother and the victim's grandmother. The victim lived with Arnold on two separate occasions for a "very short time." Arnold once saw the victim "[t]ouching herself" in the bath tub. She recalled Rachel having multiple relationships prior to dating Kennedy.

On cross-examination, Arnold testified that she had "a lot of interactions" with the victim while the victim lived with Kennedy. Arnold said the victim once asked her about sexual matters. Arnold stated that the victim "started saying things that I thought, 'Oh, my goodness. This is not what an eight year old girl needs to know.'["] The victim asked about the meaning of the word "dick." The victim did not tell her where she learned about such sexual matters. Arnold said the victim was terrified of Kennedy, and Arnold described Kennedy as very controlling. She was concerned that the victim had been sexually abused. She also believed that Kennedy beat the victim because she had bruises.

Kennedy denied that he sexually molested the victim. He first met the victim when she was four years old, and he provided financial support for her during his relationship with Rachel. He testified that the victim told lies in the past that led to arguments between him and Rachel. Kennedy and Rachel spanked the victim when she needed to be disciplined. On

the night of the alleged sexual abuse, Kennedy said he and the victim were watching a movie in the living room at around 10:00 p.m. The movie ended at around midnight, and the victim went to her bedroom.

On a later date, Kennedy was not able to locate his keys. He and Rachel concluded that the victim had the keys last. Kennedy told the victim to help look for the keys. When she stopped looking, Kennedy took her into a bedroom and threatened to spank her. He said the victim became extremely upset, and she claimed she did not love Kennedy. He decided not to spank the victim. Kennedy and Rachel had a conversation with the victim during which the victim said, "'I'm going to tell Rachel what you've been doing to me.'" The victim then claimed Kennedy had "been sticking his dick in me." Kennedy said he never heard the victim use the word "dick" before. Kennedy denied threatening to kill the victim or Rachel.

Following the testimony at trial, the jury found Kennedy guilty of the charged offenses.

**Sentencing Hearing**. The State did not call any witnesses at the sentencing hearing. It offered a pre-sentence report that included impact statements from the victim and Rachel. The defense called Kennedy as its lone witness. Kennedy continued to protest his innocence. At the sentencing hearing, the trial court sentenced Kennedy to twenty-five years for rape of a child, ten years for attempted rape of a child, eleven months and twenty-nine days for assault, and four years for coercion of a witness. The trial court ordered the sentences for assault and coercion of a witness to run concurrently with the conviction for rape of a child. In considering consecutive sentencing, the trial court stated:

> Now, Count 2, the ten year sentence for attempted rape of a child, the Court finds under T.C.A. 40-35-115 that this defendant has been convicted of more than one criminal offense involving sexual abuse and specifically under Subsection A under 40-35-115(b)5, the Court finds by a preponderance of the evidence that this defendant is convicted of two or more statutory offenses involving sexual abuse of a minor and I have given consideration to the aggravating circumstances arising from this relationship between the defendant and his stepdaughter, the victim. Also I have considered the time span between the defendant's undetected sexual acts. Again, it's pretty clear from the record, I understand the indictment charges January of '08, but the proof was that one of these offenses occurred perhaps in December, the later part of December '07, and the later occurred several weeks later in January of '08. So the Court finds that there is a time span between these two sexual acts.

Also the Court considers the nature and scope of the sexual acts and also considers the extent of the residual, physical and mental damage to the victim in this case. Now, specifically I want to say this: There was more than ample evidence that not only was there anal penetration of this child by the defendant, there was physical evidence of vaginal penetration of this child . . . plus also testimony that there was perhaps oral penetration. . . . Again, in the Court's opinion, this is a very extensive sexual abuse case involving both oral, anal and vaginal penetration of this child.

Also the Court[,] based upon the testimony of Dr. Piercy, she indicated that this would have been very painful to this child this type of sexual abuse. I do consider that as part of the factors in this case.

The court also referred to the impact statement provided by the victim. Based on the foregoing, the court ordered that the sentence for attempted rape of a child to be served consecutively with the sentence for rape of a child, for an effective sentence of thirty-five years in the Tennessee Department of Correction.

Following the sentencing hearing, Kennedy filed a motion for new trial. This motion was denied by the trial court. Kennedy filed a timely notice of appeal.

**ANALYSIS**

**I. <u>Sufficiency of the Evidence</u>**. Kennedy claims the evidence was insufficient to support his conviction for rape of a child. Specifically, he argues:

Dr. Piercy admitted that though she did find scarring on [the victim], she could give no indication of what object caused the injuries or when it happened. In this particular case, there is a very small time frame in which the abuse was to have occurred (beginning of December 2007 through January 11, 2008). As Dr. Piercy said, the abuse that caused those injuries could have occurred prior to that time frame, and it is reasonable to conclude that after hearing testimony that the child had scarring, reasonable doubt existed as to whether the scarring could have actually occurred during the time frame at issue. The jury could have easily been confused about what had happened to [the victim] during that particular time frame and could have convicted him based on something that very well may not have happened during the time they lived in Chester County.

The State asserts sufficient evidence was presented that Kennedy sexually penetrated the victim in Chester County. Upon review, we agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, this court must consider "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." The requirement that guilt be found beyond a reasonable doubt is applicable in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977) and Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)).

When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." State v. Philpott, 882 S.W.2d 394, 398 (Tenn. Crim. App. 1994) (citing State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978), superseded by statute on other grounds as stated in State v. Barone, 852 S.W.2d 216, 218 (Tenn.1993)). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659 (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citation omitted).

Kennedy was convicted of rape of a child under Tennessee Code Annotated section 39-13-522(a), which states:

> Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age.

Section 39-13-501(7) includes the following definition of "sexual penetration":

> "Sexual penetration" means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required[.]

In this case, sufficient evidence was presented that Kennedy raped the victim. The indictment charges that Kennedy sexually penetrated the victim on or about January of 2008. The victim testified that in early January, Kennedy digitally penetrated her at her home in Chester County. The victim was watching a movie with Kennedy when he placed his hands inside of her clothes and started to pinch and squeeze the inside of her vagina and buttocks. The victim said Kennedy touched her about twenty times. The victim testified that she told her mother about the rape three days after it occurred. Rachel said this disclosure happened on January 10. Dr. Piercy testified that the victim suffered injuries to her hymen and anus that could have been caused by digital penetration.

We recognize that there was also testimony, particularly from Dr. Piercy, that Kennedy penetrated the victim with his penis in December of 2007. We do not believe this testimony undermines the sufficiency of the evidence as to the rape in January of 2008. We are also unpersuaded by Kennedy's claim that the evidence was insufficient because Dr. Piercy could not state for certain when the victim's injuries occurred. The fact that the victim's injuries possibly arose from prior incidents of sexual abuse does not mean that the rape in January did not happen. As discussed above, there was evidence that Kennedy digitally penetrated the victim in January of 2008. Accordingly, Kennedy is not entitled to relief on this issue.

**II. Prior Allegation of Sexual Abuse**. Kennedy claims the trial court erred in denying his right to question the victim and Rachel about a prior allegation of sexual abuse. Purportedly, when the victim was four years old, she alleged that she was sexually abused by Kennedy's brother. Kennedy claims this prior allegation went to the victim's credibility, and therefore he should have been allowed to question the victim and Rachel pursuant to Rule 608 of the Tennessee Rules of Evidence. In response, the State asserts that the trial court did not abuse its discretion because the conditions of Rule 608 were not met.

The Tennessee Supreme Court has generally held, "questions concerning the admissibility of evidence rest within the sound discretion of the trial court, and this Court will not interfere in the absence of abuse appearing on the face of the record." State v. Pylant, 263 S.W.3d 854, 870 (Tenn. 2008) (citing State v. Dotson, 254 S.W.3d 378, 392 (Tenn. 2008); State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997); State v. Van Tran, 864 S.W.2d 465, 477 (Tenn. 1993); and State v. Harris, 839 S.W.2d 54, 73 (Tenn. 1992)). A trial court is found to have abused its discretion when it applies "an incorrect legal standard or [reaches] a decision which is illogical or unreasonable and causes an injustice to the party complaining." State v. Ruiz, 204 S.W.3d 772, 778 (Tenn. 2006) (citing as an example Howell v. State, 185 S.W.3d 319, 337 (Tenn. 2006)).

Rule 608(b) of the Tennessee Rules of Evidence states in relevant part:

**Specific Instances of Conduct**. Specific instances of conduct of a witness for the purpose of attacking or supporting the witness's character for truthfulness, other than convictions of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, if probative of truthfulness or untruthfulness and under the following conditions, be inquired into on cross-examination of the witness concerning the witness's character for truthfulness or untruthfulness or concerning the character for truthfulness or untruthfulness of another witness as to which the character witness being cross-examined has testified. The conditions which must be satisfied before allowing inquiry on cross-examination about such conduct probative solely of truthfulness or untruthfulness are:

(1) The court upon request must hold a hearing outside the jury's presence and must determine that the alleged conduct has probative value and that a reasonable factual basis exists for the inquiry[.]

Resolution of this issue is problematic because Kennedy articulated different grounds upon which to question the victim regarding the prior allegation of sexual abuse at trial than he now argues in this appeal. "As a general rule, a party may not litigate an issue on one ground, abandon that ground post-trial, and assert a new basis or ground on appeal." State v. Leach, 148 S.W.3d 42, 55 (Tenn. 2004) (citing Johnson v. State, 38 S.W.3d 52, 60 n. 8 (Tenn. 2001)). However, the record shows that Kennedy argued the same grounds for relief in his motion for new trial that he relies upon now; accordingly, we will review the issue as presented.

At trial, defense counsel asked the victim, "Do you remember telling your mother and [Kennedy] that [Kennedy's brother] had sexually abused you?" The State objected because the defense had not given notice pursuant to Rule 412.[2] A lengthy bench conference then occurred with the following pertinent exchange:

THE COURT: What's the reason for asking that question?

_____

[2] Before evidence of an alleged victim's sexual behavior may be introduced at trial, Rule 412 of the Tennessee Rules of Evidence requires, among other things, that the defendant file a written motion ten days prior to the trial date which shall be accompanied by a written offer of proof describing the specific evidence and the purpose for introducing it. Tenn. R. Evid. 412(d)(1).

DEFENSE COUNSEL: Because she has made allegations before and the allegations have been unfounded. They are identical allegations.

THE COURT: Are you prepared to present proof that whatever allegations [were] unfounded?

. . . .

DEFENSE COUNSEL: Well, Your Honor, what I want to show the jury, the doctor's testimony was very specific that the scarring cannot be dated. She said she can't tell if it's been there six months, a year or if when she was one year old. This does two things, it shows that [the victim] has made these allegations before so she's obviously had sexual knowledge prior to the accusation of my client.

THE COURT: Her answer was, no, she had not accused anybody. That's her answer.

DEFENSE COUNSEL: Secondly, if in fact it did happen and if it was true, it would explain the scarring that the doctor found on her medical report.

. . . .

THE COURT: Have you provided any notice to the State that you were going to get into any kind of prior sexual conduct?

DEFENSE COUNSEL: Well, your honor, I don't know that there was conduct. All I know is there was an allegation that was related by the child to the parents. You know, this is exculpatory in nature as is laying a foundation for why she would have such prior knowledge of sexual acts other than engaging in intercourse with my client.

THE COURT: I'm reading under 412 specific incidence, subsection C, specific incidence of conduct. It says, "Evidence of specific instances of a victim's sexual behavior is inadmissible unless admitted in accordance with the procedures in this rule, subsection D." It says, "Offered by the defendant on the issue of credibility of the victim." That's what you are offering it for; right?

-11-

DEFENSE COUNSEL: No, Your Honor, not credibility. As an alternative explanation as to how if the allegation were true of how the scarring could have resulted.

The trial court explained that if counsel intended to "open [] the door" beyond the one incident covered at trial, then the State would be permitted to cross-examine Kennedy regarding other sexual allegations the victim made against him. The trial court continued:

THE COURT: You tell me two different things, but under this rule, you have got to provide written notice to the State if you are going to get into some other alleged sexual activity. You have to give the State written notice under Rule 412 and you've not done that; right?

DEFENSE COUNSEL: Your Honor, with all due respect, I don't consider an allegation sexual activity. There is nothing out there that says the child had sex with anyone. The only thing we have is the child making an allegation.

The trial court sustained the State's objection and ordered the jury to disregard the victim's response. At the motion for new trial, Kennedy argued, citing State v. Mooneyhan, No. M2006-01330-CCA-R3-CD, 2007 WL 3227066 (Tenn. Crim. App. Oct. 30, 2007), perm. app. denied. (Tenn. Jan. 18, 2008) and State v. Wyrick, 62 S.W.3d 751, 771 (Tenn. Crim. App. 2001), that the prior false allegation did not fall under the purview of Rule 412 because it was not sexual conduct. When specifically asked by the trial court what evidence was disallowed, defense counsel responded, "The gist of it is that D.C.S. found that that allegation was unfounded. I don't [know] the details. I never was able to know the details." The trial court questioned counsel further regarding how they intended to show the allegation was false. Defense counsel explained that she did not have any proof readily available at trial because she believed the D.C.S. personnel would have claimed the information to be protected by privilege.

In response, the State reminded the court that at trial the defense was attempting to cross-examine the victim regarding allegations of a sexual encounter with some other person. In addition, the State explained that, based on the D.C.S. file, someone other than the victim had previously suspected that the victim was being sexually abused and reported it to D.C.S. Following an investigation of Kennedy, Kennedy's brother, and the victim's mother, those allegations were determined to be unfounded. However, the State emphasized that the victim had never made a false allegation of sexual abuse. Defense counsel explained that she did not have her complete file and apologized for the misunderstanding regarding the origin of the report. In denying the motion for new trial, the trial court relied upon its original ruling at trial on this issue.

Regardless of the theory upon which Kennedy chooses to rely, the record is completely devoid of any proof that the victim alleged that she had been sexually abused prior to the instant case. Even if we attribute the prior allegation of sexual abuse alluded to by the defense to the victim, there was no offer of proof for the trial court or this court to consider to determine if the statement was false. Tenn. R. Evid. 608(b)(1) (requiring a hearing outside the jury's presence and a determination that the alleged conduct has probative value and that a reasonable factual basis exists for the inquiry); see also State v. Wyrick, 62 S.W.3d 751(Tenn. Crim. App. 2001) (stating that "some factual basis for the prior false report must exist before the party seeking to impeach the witness may ask about it"). Accordingly, we conclude that Kennedy failed to establish that the victim had previously alleged sexual abuse or that such allegation was false. Kennedy is not entitled to relief on this issue.

**III. Sentencing**. Kennedy claims the trial court erred by ordering that his sentence for attempted rape of a child run consecutively with his sentence for rape of a child. His sole argument is that consecutive sentencing was excessive because his criminal record was limited to minor traffic offenses. The State claims the trial court acted within its discretion by imposing consecutive sentencing.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d). Nevertheless, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our de novo review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. T.C.A. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. The defendant, not the State, has the burden of showing the impropriety of the sentence. T.C.A. § 40-35-401(d), Sentencing Commission Comments.

Where a defendant is convicted of one or more offenses, the trial court has discretion to decide whether the sentences shall be served concurrently or consecutively. T.C.A. § 40-35-115(a) (2006). A trial court may order multiple offenses to be served consecutively if it finds by a preponderance of the evidence that a defendant fits into at least one of the seven categories in section 40-35-115(b). An order of consecutive sentencing must be "justly deserved in relation to the seriousness of the offense." T.C.A. § 40-35-102(1). In addition, the length of a consecutive sentence must be "no greater than that deserved for the offense committed." T.C.A. § 40-35-103(2).

In imposing consecutive sentencing, the trial court found that criterion (5) was applicable under section 40-35-115(b). Criterion (5) states:

The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims[.]

The record supports the trial court's finding that criterion (5) was applicable. We recognize that the trial court considered the testimony about the rape in December of 2007; however, we believe criterion (5) was satisfied based solely on what transpired in January of 2008. Kennedy was convicted of two statutory offenses involving the sexual abuse of a minor. Kennedy abused his position as the victim's stepfather. They lived together, and the victim viewed Kennedy as a father figure. Kennedy also tried to use his position of authority to keep the victim from disclosing the rape and attempted rape. As to the nature and scope of the sexual acts, the victim testified that Kennedy "pinched and squeezed" the inside of her vagina and buttocks with his hand. The victim said Kennedy touched her about twenty times. When the victim went into her bedroom, Kennedy repeatedly asked to penetrate her with his penis. The victim said she had to tell Kennedy "no" four times before he left her bedroom. Dr. Piercy testified that the victim suffered considerable injuries to her hymen and anus that may have been caused by the digital penetration. Dr. Piercy had the victim return for a second examination because her injuries were so unusual. The victim's impact statement reveals that she also suffered psychological damage. The presence of these aggravating circumstances is not offset by Kennedy's limited criminal record. The record supports the trial court's application of criterion (5). Accordingly, the trial court did not err by imposing consecutive sentencing. Kennedy is not entitled to relief on this issue.

## CONCLUSION

Based upon the foregoing, the judgments of the trial court are affirmed.

_____
CAMILLE R. McMULLEN, JUDGE

-14-