IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville July 24, 2018

## STATE OF TENNESSEE v. QUINTON DUJAUN PRIMM

**Appeal from the Circuit Court for Dickson County**
**No. 22CC-2015-CR-299   David D. Wolfe, Judge**

_____

### No. M2017-02069-CCA-R3-CD

_____

The Appellant, Quinton Dujaun Primm, was convicted in the Dickson County Circuit Court of selling one-half gram or more of cocaine, a Class B felony, and selling less than one-half gram of cocaine, a Class C felony, and received consecutive sentences of twenty-five and fifteen years, respectively.  On appeal, the Appellant contends that the trial court erred by allowing a lay witness to testify about what the witness heard on an audiotape, that the trial court erred by refusing to declare a mistrial when a witness revealed that the Appellant had been incarcerated previously, and that the evidence is insufficient to support the convictions.  Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and J. ROSS DYER, JJ., joined.

James L. Baum, Pegram, Tennessee, for the appellant, Quinton Dujaun Primm.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; and Wendell Ray Couch, Jr., District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

At trial, Seth Lyles testified that in 2014, he was an agent for the Twenty-Third Judicial District Drug Task Force and that his job was "to work with street level narcotics."  He said that Megan Holman "sought us out" to work as a confidential informant (CI) in November 2014 and that she bought drugs from multiple sellers.  On

November 25, Agent Lyles met with Holman, searched her car, and gave her $100 in "marked" money so that she could buy drugs from the Appellant. He also gave her an audio- and video-recording device. Holman had agreed to meet the Appellant at a gas station at the intersection of AG Mynatt Road and Highway 48 in Dickson. Agent Lyles followed Holman to the gas station and parked in a nearby parking lot.

Agent Lyles testified that the Appellant was sitting in a blue Monte Carlo and that Holman walked to driver's side window of the Appellant's car. Agent Lyles said that he watched, listened to, and photographed the drug buy as it occurred and that the transaction took just a few minutes to complete. After the transaction, Agent Lyles followed Holman to a secure location and retrieved crack cocaine and the recording device from her. The State played the recording for the jury, and Agent Lyles explained that it showed Holman walking to the Appellant's Monte Carlo, making contact with him, and leaning into his car.

Agent Lyles testified that on December 2, 2014, he met with Holman again. He searched her, gave her $150 in marked money, and followed her to the Dickson Walmart. Holman bought drugs from the Appellant in the parking lot "on [the] back side of the building," and Agent Lyles observed the transaction. After the transaction, Agent Lyles followed Holman to a secure location and retrieved one baggie of crack cocaine and one baggie of powder cocaine from her. He stated that "[t]here was some issue with the camera that day" so that the camera only audio-recorded the transaction. The State played the recording for the jury, and Agent Lyles said the Appellant could be heard saying during the transaction that "there's some 'girl' in there too." Agent Lyles explained that "girl" was a reference to powder cocaine. Agent Lyles sent the drugs Holman bought from the Appellant on November 25 and December 2 to the Tennessee Bureau of Investigation (TBI).

On cross-examination, Agent Lyles testified that he was about one hundred twenty feet from Holman and the Appellant during the November 25 drug buy. He acknowledged that he did not take any photographs showing Holman handing money to the Appellant or the Appellant handing drugs to Holman. Agent Lyles did not personally search Holman before the transactions. He said that Agent Bronson Morgan searched her and that he did not know if Agent Morgan searched the inside of her bra. Agent Lyles stated that he also did not know what Holman said to the Appellant in order to arrange their meetings, that he never asked Holman if she was having a sexual relationship with the Appellant, and that he never asked Holman if she was addicted to drugs. Agent Lyles did not recover any marked money from the Appellant.

Bronson Morgan testified that he was an agent with the Twenty-Third Judicial District Drug Task Force in 2014 and that he was present for Holman's drug buys from

the Appellant on November 25 and December 2. Agent Morgan searched Holman prior to both buys. He said that whenever he searched a female CI, he always grabbed the CI's center bra strap and shook the strap to make sure the CI did not have anything inside her bra. He did so in this case before and after Holman bought drugs from the Appellant. On cross-examination, Agent Morgan acknowledged that he did not search Holman's panties or conduct a body cavity search.

Thirty-one-year-old Megan Holman testified that at the time of the Appellant's trial, she was being held in the Dickson County Jail for failure to appear. The State asked if she bought drugs from the Appellant on November 25 and December 2, 2014, and she answered, "I believe [so]. I really don't remember. I don't know. It was -- yeah. Probably so." She said she could not remember because she was using drugs at the time of the drug buys. She then stated that she bought drugs from the Appellant two times. The State showed Holman a photograph taken by Agent Lyles at the gas station on November 25, and she said the photograph showed her and the Appellant. Holman said that during the December 2 transaction, she got into the Appellant's car and bought powder cocaine from him. She said that she knew the Appellant "[v]ery well" prior to the drug buys but that she did not think she ever had a sexual relationship with him.

On cross-examination, Holman acknowledged that she was a drug addict and that she had been using drugs since she was twelve or thirteen years old. Holman was using opiates in November and December 2014, and they affected her memory. She said that although she did not remember the dates of the drug buys, she remembered participating in the buys.

Holman testified that prior to working for the drug task force, her boyfriend was in "trouble." The police approached her about working as a CI, and she agreed because she was hoping to help her boyfriend. She said the police paid her for her work, that she was not receiving anything in exchange for her testimony against the Appellant, and that she wished she had never worked as a CI. Holman acknowledged that prior to her drug buys in this case, she wrote letters to the Appellant in which she told him that she loved him and that "[m]aybe we can get together as a couple." She also acknowledged that she sent photographs to the Appellant but denied that she sent him nude photographs. She said she did not remember being angry with the Appellant prior to November 2014.

Holman testified that she worked for the drug task force for a couple of months and that an officer always searched her before she participated in a drug transaction. The officer never reached inside her underwear during a search but made her shake out her bra. The officer also patted her down.

Ella Carpenter, a special agent forensic scientist with the TBI, testified as an expert in forensic chemistry that she analyzed a rock-like substance collected by Agent Lyles on November 25, 2014. The substance was cocaine base and weighed 0.36 grams. Lela Jackson, a forensic scientist with the TBI, also testified as an expert in forensic chemistry that she analyzed a white powder and a rock-like substance collected by Agent Lyles on December 2, 2014. The white powder was cocaine and weighed 0.44 grams, and the rock-like substance was cocaine base and weighed 0.43 grams.

At the conclusion of Jackson's testimony, the State rested its case. The jury convicted the Appellant as charged of selling one-half gram or more of cocaine, a Class B felony, and selling less than one-half gram of cocaine, a Class C felony. After a sentencing hearing, the trial court sentenced the Appellant as a Range III, persistent offender to consecutive sentences of twenty-five and fifteen years, respectively, for a total effective sentence of forty years.

## II. Analysis

### A. Agent Lyles's Testimony

The Appellant contends that the trial court erred by allowing Agent Lyles, who was a lay witness, to testify about what he heard the Appellant say on the audiotape of the December 2 drug buy. The State argues that the trial court did not err. We agree with the State.

Agent Lyles testified that the December 2 drug buy was audio-recorded, and the State played the recording for the jury. At some point, the State stopped the recording and asked Agent Lyles, "Did you hear what the defendant just said? Agent Lyles answered yes, and the State asked him, "What did he say?" Defense counsel objected, arguing that the recording was the best evidence. The State responded that Agent Lyles "was listening in realtime, so he can repeat the admission of the defendant." The trial court ruled that Agent Lyles could say what he heard on the recording but instructed the jury,

> You can form your own opinions based upon your hearing of the audio. This is being allowed only to assist in explaining what the somewhat distorted audio says and is only being allowed for the purposes of allowing him to testify as to what he heard on that occasion in realtime.

- 4 -

When Agent Lyles's testimony resumed, he said he heard the Appellant say on the recording that "there's some 'girl' in there too." Agent Lyles explained that "girl" was a reference to powder cocaine.

On cross-examination, defense counsel asked Agent Lyles if he recalled "the specifics" of the conversation on the recording, and Agent Lyles said that he remembered Holman and the Appellant having a conversation but that he did not remember "the specific words or verbiage" of their conversation. Defense counsel renewed his objection to Agent Lyles's being allowed to testify about what he heard the Appellant say on the recording. The trial court overruled the objection but allowed defense counsel to question Agent Lyles about "his recollections regarding this." On appeal, the Appellant contends that the trial court's allowing Agent Lyles to testify about what he heard on the recording "defeated the very purpose of the best evidence rule" and violated Tennessee Rule of Evidence 701, the evidentiary rule regarding opinion testimony by lay witnesses.

Generally, "questions concerning the admissibility of evidence rest within the sound discretion of the trial court, and this [c]ourt will not interfere in the absence of abuse appearing on the face of the record." State v. Pylant, 263 S.W.3d 854, 870 (Tenn. 2008) (citing State v. Dotson, 254 S.W.3d 378, 392 (Tenn. 2008); State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997); State v. Van Tran, 864 S.W.2d 465, 477 (Tenn. 1993); State v. Harris, 839 S.W.2d 54, 73 (Tenn. 1992)). The trial court's discretion in determining the admissibility of evidence is generally circumscribed by the Tennessee Rules of Evidence.

As to the Appellant's claim that Agent Lyles's testimony violated the best evidence rule, Tennessee Rule of Evidence 1002 generally provides that in order to prove "the content of a writing, recording, or photograph, the original writing, recording or photograph is required." "The best evidence rule is a rule of preference rather than exclusion. It does not exclude evidence but rather requires the introduction of the best available form of the evidence." Iloube v. Cain, 397 S.W.3d 597, 602 (Tenn. Ct. App. 2012) (citations and internal quotation marks omitted). This court has held that allowing a jury to use a transcript, in addition to hearing an audiotape, did not violate the best evidence rule when the trial court instructed the jury that the tape, not the transcript, was the actual evidence. State v. Barnard, 899 S.W.2d 617, 623-24 (Tenn. Crim. App. 1994). We have a similar situation in this case. Here, the State introduced the audio-recording into evidence and played the recording for the jury. The trial court allowed Agent Lyles to interpret what he heard on the recording but instructed the jury that the recording was the actual evidence. Accordingly, we conclude that the trial court did not err.

As to the Appellant's claim that Agent Lyles's testimony violated Tennessee Rule of Evidence 701, the evidentiary rule regarding opinion testimony by lay witnesses, the

- 5 -

Appellant did not object to any part of Agent Lyles's testimony under Rule 701. See State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996). Therefore, the issue is waived. See Tenn. R. App. P. 36(a).

## B. Mistrial

Next, the Appellant contends that the trial court erred by refusing to declare a mistrial when Megan Holman testified that the Appellant had been incarcerated previously. The State argues that the trial court did not err. Again, we agree with the State.

Just prior to Holman's cross-examination, defense counsel requested to question her outside the presence of the jury. During the jury-out hearing, Holman stated that "there was a couple of months there when [the Appellant] first got out [of jail] that we spent some time together, and he went back to jail." The State asked that the trial court instruct Holman "not to say that" in front of the jury. The trial court instructed Holman not to say anything in front of the jury about the Appellant's having been in jail. Just before the jury returned to the courtroom, the trial court again instructed Holman not to say anything about the Appellant's previous incarceration.

During defense counsel's cross-examination of Holman, counsel asked, "And was there a time that you wanted to be intimate with Mr. Primm?" Holman answered, "I mean, talk is talk when somebody's in jail. As soon as he got out, that changed." Defense counsel motioned for a mistrial. The trial court denied the motion but advised the jury that "any admission of jail has nothing to do with this case. You should not consider that in any way, shape, form, or fashion in your discussions -- or decision in this case."

A mistrial should be declared in criminal cases only in the event that a manifest necessity requires such action. State v. Millbrooks, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991). In other words, a mistrial is an appropriate remedy when a trial cannot continue or a miscarriage of justice would result if it did. State v. McPherson, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994). This court has stated:

> There are three non-exclusive factors which the Tennessee courts have applied in determining whether a mistrial was necessary after improper testimony was presented to the jury: (1) whether the state elicited the testimony; (2) whether the trial court gave a curative instruction; and (3) the relative strength or weakness of the state's proof.

- 6 -

State v. Lawrence Taylor, No. W2002-00183-CCA-R3-CD, 2003 WL 402276, at *4 (Tenn. Crim. App. at Jackson, Feb. 14, 2003). The decision to grant a mistrial lies within the sound discretion of the trial court, and this court will not interfere with the exercise of that discretion absent clear abuse appearing on the face of the record. See State v. Hall, 976 S.W.2d 121, 147 (Tenn. 1998). Moreover, the burden of establishing the necessity for mistrial lies with the party seeking it. State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996).

Turning to the instant case, it was the prosecutor who initially expressed concern that defense counsel might elicit improper testimony from Holman and requested that the trial court advise Holmon not to mention the Appellant's previous incarceration to the jury. During Holman's cross-examination, defense counsel questioned her about her wanting to be intimate with Appellant and the timing of her wanting to be with him. It was during that questioning that Holman said the Appellant "got out" of jail. The trial court gave a curative instruction to the jury, and the State's proof was strong. Accordingly, we conclude that the trial court did not err by refusing to declare a mistrial.

C. Sufficiency of the Evidence

Finally, the Appellant claims that the evidence is insufficient to support the convictions because the State's primary witness, Holman, was not a competent witness. The State argues that the evidence is sufficient. We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. Hall, 976 S.W.2d at 140. "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)).

In order to sustain the Appellant's convictions, the State was required to prove that he knowingly sold a controlled substance, i.e., cocaine. See Tenn. Code Ann. § 39-17-417(a)(3). If the amount of cocaine was one-half gram or more, the offense was a Class B felony, and if the amount was less than one-half gram, the offense was a Class C felony. See Tenn. Code Ann. § 39-17-417(c)(1), (2)(A).

Turning to the instant case, Holman gave conflicting testimony in that she initially said she did not remember the drug buys but later said she did remember them. She identified a photograph of her and the Appellant taken by Agent Lyles on November 25, 2014, and she said she bought powder cocaine from the Appellant on December 2, 2014. Defense counsel thoroughly questioned Holman about her being on drugs at the time of the transactions and about her memory of the events but never challenged her competency to testify. We note that every person is presumed competent to be a witness. Tenn. R. Evid. 601. It was the jury's duty to evaluate the credibility of the witnesses, to determine the weight given to their testimony, and to resolve all conflicts in the evidence. See State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

In any event, Agent Lyles testified that Holman arranged to buy drugs from the Appellant on November 25 and December 2. Prior to the drug buys, Agent Morgan searched Holman, and Agent Lyles gave her marked money and a recording device. Agent Lyles followed Holman to a gas station on November 25 and to Walmart on December 2, and he observed Holman interact with the Appellant. Although Agent Lyles did not actually see Holman hand money to the Appellant or the Appellant hand drugs to Holman, he followed Holman to a secure location after the drug buys, Agent Morgan searched her, and Agent Lyles retrieved drugs from her. The transactions were recorded, and the State played the recordings for the jury. Therefore, we conclude that the evidence is sufficient to support the Appellant's convictions, with or without Holman's testimony.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

_____
NORMA MCGEE OGLE, JUDGE